In re Eugene R. RUMP, Debtor.

Kathleen RUMP, Plaintiff,

v.

Eugene R. RUMP, Defendant.

Bankruptcy No. 92–43183–293.
Adv. No. 92–4335.

United States Bankruptcy Court,
E.D. Missouri, E.D.

Feb. 11, 1993.

Christopher G. Kelleher, Suelthaus & Kaplan, P.C., St. Louis, MO, for plaintiff.

Steven C. Bublitz, Clayton, MO, for defendant, debtor.

Robert J. Blackwell, St. Louis, MO, trustee.

James S. Cole, St. Louis, MO, Asst. U.S. trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

Plaintiff filed her adversary complaint seeking a determination that certain obligations of Defendant owed her and her attorney pursuant to an order of the St. Louis County Circuit Court in a dissolution proceeding are non-dischargeable under 11 U.S.C. Sec. 523(a)(5). At the hearing held before this Court on December 11, 1992 to determine the merits of Plaintiff's complaint, counsel for the parties stipulated that the transcripts of Plaintiff's deposition and Defendant's 2004 Examination, and all exhibits exchanged by the parties pursuant to the pre-trial order were to be admitted into the record without objection. In addition, the Court heard testimony from both Plaintiff and Defendant at the hearing.

### FACTUAL BACKGROUND

Upon consideration of the testimony, record and briefs, the Court makes the following findings of fact:

Plaintiff and Defendant were married on June 4, 1977. There were two children born of the marriage. On September 27, 1991, Defendant filed a petition seeking dissolution of the marriage in the St. Louis County Circuit Court (Cause No. 629316) (the "Divorce Case"). Defendant also filed with the court in the Divorce Case sworn statements of Income and Expense ("Defendant's Income/Expense Statement") dated as of September 27, 1991.

On or about October 24, 1991, Plaintiff filed her Answer in the Divorce Case and Cross Petition For Dissolution of Marriage, sworn Statement of Income and Expenses dated October 23, 1991 ("Plaintiff's Income/Expense Statement"), and Motion and Affidavit for Temporary Maintenance, Child Support, Support Money, Attorney's Fees, Suit Money, and Costs Pendente Lite ("PDL Motion").

At the December 2, 1991 hearing on the PDL Motion, Plaintiff and Defendant, who were both represented by counsel, agreed upon and the court in the Divorce Case entered a PDL Order in which *inter alia:*

(a) Defendant was ordered to pay certain marital debts and obligations jointly owed by Plaintiff and Defendant, specifically consisting of Gershman Finance a/k/a Solon Gershman, Inc. on the first deed of trust on the marital residence (monthly payment of $396.00); AVCO Financial Services on the second deed of trust on the marital residence (monthly payment of $135.00); VISA/First Interstate Bank (total balance due of approximately $300.00); Resolution Trust Corporation (monthly payment of $50.40, total

balance due of approximately $455.00); American General Finance Corporation (monthly payment of $118.00, total balance due of approximately $3,186.00); PAYCO (monthly payment of $50.00, total balance due of approximately $600.00); Overland Medical Center (monthly payment of $22.89, total balance due of approximately $270.00). These marital debts are collectively referred to as "Marital PDL Debts".

(b) Defendant was ordered to pay $1,000.00 to Plaintiff for her attorney's fees in connection with the PDL Order by directly paying the amount to Plaintiff's attorneys ("PDL Attorney's Fees").

(c) Defendant was ordered to pay to Plaintiff monthly child support in the amount of $418.00 for each of the two minor children who were living with Plaintiff.

(d) Plaintiff was ordered to pay a marital debt jointly owed by Plaintiff and Defendant to Sunset Credit Union, monthly payment of $110.00.[1]

(e) Defendant was ordered to pay certain of his sole debts and obligations specifically consisting of: Rhodes Financial Services (monthly payment of $104.00, total balance due of approximately $2,600.00); Automotive Leasing Corporation (monthly payment of $289.62, total balance due of approximately $3185.00); Columbia House Records (monthly payment of $20.00, total balance due of approximately $80.00); Contact Lens Associates (monthly payment of $50.00, total balance due of approximately $165.00); National Rent To Own (monthly payment of $70.00, total balance due of approximately $2,100.00). These debts are collectively referred to as "Defendant's Individual PDL Debts".

(f) Plaintiff did not receive any payments from Defendant designated as "maintenance".

The court in the Divorce Case made no subsequent rulings in regard to the PDL Order. Defendant did not petition the court in the Divorce Case for modification of the PDL Order based upon a change in circumstances. Debtor fulfilled his obligations under the PDL for one or two months and then stopped paying the Marital PDL Debts, the PDL Attorney's fees, and Defendant's Individual PDL Debts.

On May 1, 1992, Defendant filed his Chapter 7 petition in bankruptcy seeking to discharge *inter alia* his Marital PDL Debts, PDL Attorney's Fees and Defendant's Individual PDL Debts. On August 20, 1992, Defendant received a discharge under Section 727 of the Bankruptcy Code of all dischargeable debts. The parties have stipulated and the Court also finds that Plaintiff was not legally obligated to pay any of Defendant's Individual PDL Debts. Accordingly, as Plaintiff's complaint does not concern non-marital debts, Defendant has been discharged from his obligation to repay Defendant's Individual PDL Debts.

On August 6, 1992, Plaintiff filed this adversary complaint seeking a determination that the Marital PDL Debts and the PDL Attorney's Fees owed by Defendant are in the nature of support and are therefore non-dischargeable under 11 U.S.C. Sec. 523(a)(5).

At the December 2, 1991 hearing, when the Circuit Court entered the PDL Order, Plaintiff testified that:

(1) she had recently moved into an apartment with the two minor children after having been told to leave the family residence by Defendant;

(2) prior to leaving the family residence, she had been subjected to verbal and psychological abuse by Defendant and was afraid of him;

(3) she had been given a limited amount of marital property mostly in the nature of furniture for the two minor children;

(4) she had recently found a job in which she earned $1,500.00 per month in gross income and $1128.46 per month in net income;

---

1. For some reason, Defendant did not list this debt in his bankruptcy schedules filed in connection with his Chapter 7 petition.

(5) she had a high school diploma and job experience as a secretary but lacked college credits or other education or job training;

(6) after paying deposits for the apartment and utilities and paying certain bills and expenses, she had less than $100.00 remaining from her first month's pay to purchase necessities for her and the two minor children;

(7) the standard of living for her and the two minor children had been dramatically reduced in comparison to the standard of living enjoyed by them during the marriage;

(8) as stated in her PDL Motion, she needed additional support and maintenance from Defendant in the total amount of $1,500.00 per month which, when added to her net take home pay, would be sufficient to meet the reasonable needs of her and the two minor children based upon the expenses noted in Plaintiff's Income/Expense Statement;

(9) the Defendant's monthly child support payment of $836.00 in addition to the monthly payments that Defendant was required to pay on the Marital PDL Debts roughly equalled the amount of support and maintenance she had requested in her PDL Motion;

(10) in lieu of any direct payment of "maintenance" by Defendant, she accepted Defendant's obligation to pay the Marital PDL Debts because of her belief that an award of "maintenance" would have been taxable income to her and, accordingly, would have reduced the amount of money that she would have had left to pay the Marital PDL Debts and the other expenses of her and the two minor children; and

(11) the Marital PDL Debts were originally incurred by Plaintiff and Defendant for the necessities of family life and were not incurred for luxuries.

Defendant also testified at the December 2, 1991 PDL hearing that:

(1) his total income from all sources was $4,250.00 per month in gross income and $2,773.46 per month in net income;

(2) he had taken college credit courses during the marriage and was certified by the State of Missouri as a Paramedic and was further certified to teach training courses to Emergency Medical Technicians ("EMT");

(3) he was employed by the University City Fire District as a firefighter and paramedic and by the St. Louis County Special School District as an EMT instructor;

(4) he was living at the family residence;

(5) he voluntarily entered into the PDL Order after consultation with his counsel;

(6) he could not recall the reasons why the Marital PDL Debts were originally incurred although in his 2004 Examination, Defendant acknowledged that all of the Marital PDL Debts were for family expenses; and

(7) he stopped making all of the payments ordered by the PDL Order sometime in January or February of 1992 but did not file his Chapter 7 Petition until May 1, 1992.

Defendant has paid through a wage assignment the child support portion of the PDL Order. The parties have stipulated and the Court finds that the child support that the Defendant was ordered to pay in the PDL Order is clearly non-dischargeable under 11 U.S.C. Sec. 523(a)(5).

DISCUSSION

 As this and other courts have held, a promise to pay a joint marital debt can create a non-dischargeable obligation provided its function is support. *In re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983). Likewise, an award of attorney's fees in a dissolution proceeding can in fact be non-dischargeable if the court determines that the award is in the nature of support. *Id.* In making such a determination, the Court is not bound by the characterization used in the state court decree but must examine the underlying purpose of the obligation. 703 F.2d at 1057. Prior decisions of this Court have looked to a number of factors in determining whether an award in a dissolution decree constitutes "support" under 11 U.S.C. Sec. 523(a)(5).

*See, Kruger v. Ellis* (*In re Ellis*), 149 B.R. 925 (Bankr.E.D.Mo.1993); *In re Barnett,* 62 B.R. 661, 663 (Bankr.E.D.Mo.1986); *In re Horton,* 69 B.R. 42, 44 (Bankr.E.D.Mo. 1986). The factors relevant to this case are:

1. Whether the support granted has been inadequate but for the debt assumption or the award of fees.

2. Whether the debts themselves were initially incurred to provide for the necessities of everyday life.

3. The relative financial resources of each spouse.

4. Whether the assumption of the debt or award of fees was fashioned to balance the disparate incomes of the parties.

5. The relative age, work skills, and educational levels of the parties.

6. Whether the obligation is enforceable by contempt.

7. Whether the Plaintiff relinquished her right to seek maintenance in exchange for the payments.

8. Whether there are minor children in the care of the Plaintiff.

9. The standard of living of the parties during the marriage.

10. The circumstances contributing to the estrangement of the parties.

██ In applying these factors, the burden of proof is on the party asserting that the obligations are non-dischargeable. In the case at bar, the Court holds that Plaintiff has sustained that burden as to the Marital PDL Debts and the PDL Attorney's Fees for the reasons noted below.

██ At the time of the PDL Order, the record clearly shows that Mrs. Rump needed support for her and the two minor children as her income alone or in conjunction with the award of child support was inadequate to provide them with life's necessities. Plaintiff stated in her PDL Motion and later testified at the hearing that she needed $1,500.00 per month in addition to her net pay in order to sustain herself and her and the Debtor's children. Plaintiff further testified that the Circuit Court's award of child support in the amount of $836.00 per month taken together with Defendant's monthly obligation to pay the Marital PDL Debts approximated the $1,500.00 per month in support and maintenance that she had sought. Accordingly, the Court finds that Plaintiff's monthly income alone or in conjunction with the award of child support (but without Defendant's payment of the Marital PDL Debts) would have been inadequate to support the reasonable needs of Plaintiff and the two minor children.

Plaintiff also testified that she decided to accept Defendant's agreement to pay the Marital PDL Debts in lieu of an award of temporary maintenance because she believed that state and federal authorities would tax an award of maintenance, and thereby reduce the amount of funds she would have had to pay the Marital PDL Debts and the other expenses of her and the two minor children.

The disparity in income between the parties provides further support for this Court's conclusion that the Circuit Court's assignment of debts to the Debtor served a maintenance function. Defendant's gross income was nearly three times greater than that of Plaintiff and his net income was nearly two and one-half times greater than hers. In addition, Defendant had superior job skills, education and training that would cause this marked disparity in incomes to continue into the foreseeable future.

Defendant's argument that Plaintiff and Defendant had roughly the same monthly net income (after subtracting the child support from Defendant's income and adding it to Plaintiff's income) ignores the fact that Plaintiff had to support herself and the two minor children while Defendant had only himself to support.

Plaintiff's testimony as to the dramatic decrease in the standard of living for her and the two minor children at the time of the PDL Order again supports the conclusion that the Plaintiff and the two minor children were in need of the amount of support and maintenance as requested in her PDL Motion. The Defendant did not

rebut Plaintiff's testimony that the parties had originally incurred the Marital PDL Debts to provide for the necessities of life for their family. Neither of them could recall exactly how the credit card debts were incurred, but they agreed that the debts did not include purchase of items of any luxury.

For the reasons already discussed in regard to the Marital PDL Debts, the Court similarly finds that the obligation of Defendant to pay the PDL Attorney's Fees is in the nature of support to Plaintiff.

The Court, therefore, holds that Defendant's obligation to pay the Marital PDL Debts and the PDL Attorney's Fees as ordered by the PDL Order are in the nature of support to Plaintiff and are non-dischargeable pursuant to 11 U.S.C. Sec. 523(a)(5). Accordingly, Defendant will be denied discharge of the Marital PDL Debts and the PDL Attorney's Fees. However, the parties should take great care to understand the limits and the extent of this decision in light of the fact that this decision is based on a PDL Order, which by its nature is temporary; lasting only until a final Decree of Dissolution is issued by the St. Louis County Circuit Court. Those Marital PDL debts which are payable on a fixed monthly dollar amount such as the debts to Gershman Finance, AVCO Financial Services, Resolution Trust Corporation, American General Finance Corporation, PAYCO and Overland Medical Center are nondischargeable in the amounts due and owing from the date of entry of the PDL Order, December 2, 1991, until the date a Decree of Dissolution entered by the St. Louis County Circuit Court becomes final. The Marital PDL debt to VISA/First Interstate Bank and the PDL attorney's fees are non-dischargeable debts regardless of the date the final Decree of Dissolution is entered.

This Court is mindful of the fact that attorneys and dissolution courts choose whether or not to designate financial obligations as maintenance for various reasons. Parties may call an award maintenance to gain tax advantages, comply with statutes or simply to indicate that it is

necessary to the actual financial support of a party. Undoubtedly, it was the multiple use of the word that prompted the Eighth Circuit to hold in *In re Williams*, 703 F.2d 1055 (1983):

> The Bankruptcy Reform Act of 1978 prohibits the discharge of a debtor's obligation to make alimony, maintenance, or support payments to his or her former spouse. 11 U.S.C. § 523(a)(5) (Supp. V 1981). Whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law. H.R.Rep. No. 595, 95th Cong., 2d Sess. 364, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6320; S.Rep. No. 989, 95th Cong., 2d Sess. 79 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5865. Debts payable to third persons can be viewed as maintenance or support obligations; *the crucial issue is the function the award was intended to serve. E.g., In re Spong*, 661 F.2d 6 (2d Cir.1981); *Poolman v. Poolman*, 289 F.2d 332 (8th Cir. 1961); *In re Jensen*, 17 B.R. 537 (Bkrtcy. W.D.Mo.1982). Though we of course regard the decisions of the state courts with deference, bankruptcy courts are not bound by state laws that define an item as maintenance or property settlement, nor are they bound to accept a divorce decree's characterization of an award as maintenance or a property settlement. *E.g., In re Lineberry*, 9 B.R. 700, 704 (Bkrtcy.W.D.Mo.1981). (Emphasis added.)

Thus, the fundamental question that must be resolved in § 523(a)(5) dischargeability cases is whether the state court award was intended to serve as a dischargeable property settlement or nondischargeable maintenance.

In the near future a St. Louis County Circuit Judge will probably enter a Final Decree of Dissolution in the pending case of *Eugene R. Rump v. Kathleen Rump*, Cause No. 629316. Whether or not any final financial obligations it may impose on Eugene R. Rump are non-dischargeable debts under 11 U.S.C. § 523(a)(5) will be determined by the principles set forth in *In re Williams* and because the parties may not agree as to whether an obligation un-

der the Final Decree of Dissolution is dischargeable, the Court will not close the instant adversary Complaint, Case No. 92–4335, until sixty days after the state court's Final Decree of Dissolution becomes final. During that sixty-day period, either party may request the Bankruptcy Court to issue a supplemental order addressing the question of dischargeability of financial obligations created by the Final Decree of Dissolution.[2]

An Order consistent with this Opinion will be entered this date.

### ORDER

For the reasons set forth in the Memorandum Opinion filed this date, it is

ORDERED that

(1) the child support that the Defendant was ordered to pay in the PDL Order is non-dischargeable under 11 U.S.C. Sec. 523(a)(5);

(2) Defendant's obligation to pay the Marital PDL Debts and the PDL Attorney's Fees as ordered by the PDL Order are in the nature of support to Plaintiff and are non-dischargeable pursuant to 11 U.S.C. Sec. 523(a)(5);

(3) those Marital PDL debts which are payable on a fixed monthly dollar amount such as the debts to Gershman Finance, AVCO Financial Services, Resolution Trust Corporation, American General Finance Corporation, PAYCO and Overland Medical Center are nondischargeable in the amounts due and owing from the date of entry of the PDL Order, December 2, 1991, until the date a Decree of Dissolution entered by the St. Louis County Circuit Court becomes final; and

(4) the Marital PDL debt to VISA/First Interstate Bank and the PDL attorney's fees are non-dischargeable debts regardless of the date the final Decree of Dissolution is entered.

---

**2.** Mr. Rump filed his current voluntary Chapter 7 bankruptcy petition on May 1, 1992. Any debts which the Debtor may have incurred since May 1, 1992 will not be discharged by the Discharge Order entered on August 17, 1992.