**In re Albert D. COPELAND, Jr., Jennifer Brown Copeland.**

**Albert D. COPELAND, Plaintiff,**

v.

**Marsha Ann COPELAND, Defendant.**

Bankruptcy No. 92–14151S.
Adv.No. 92–4507.

United States Bankruptcy Court,
W.D. Arkansas,
Texarkana Division.

March 9, 1993.

Brad Cazort, Little Rock, AR, for debtor/plaintiff.

Richard Downing, Little Rock, AR, for defendant.

William Randall Wright, Trustee, Hope, AR.

### MEMORANDUM OPINION

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the trial of the complaint filed by the separate debtor, Albert D. Copeland, to determine dischargeability of certain marital debts.[1] The debtor asserts that certain debts from his first marriage to Marsha Ann Copeland constituted a division of marital property, and not in the nature of alimony such that the debts are dischargeable. Specifically, the debtor asserts that the following three items listed in their divorce decree are in the nature of a property settlement and are not alimony or child support:

1. The amount of the debtors' earnings and earning capacity ordinarily would raise questions under section 707(b) of the Bankruptcy Code.

(1) Payments of $2,200 per month from February 1990 to August 1994;

(2) A Payment due September 1, 1994, in the amount of $32,400.00;

(3) A payment due on September 1, 1995, in the amount of $32,400.00.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(I).

The parties married on January 9, 1971, and divorced on April 6, 1990. There were two children of the marriage, only one of whom was a minor at the time of the divorce. The divorce settlement agreement entered into between the parties in Georgia on March 20, 1990, provided in pertinent part:

3.

The husband will pay to the wife the sum of $2,200.00 per month alimony beginning on or before the 1st day of February, 1990 and continuing on a monthly basis through August 1, 1994. Said sum shall be a lump sum alimony on an installment basis and shall not be effected [sic] by the death of the husband or the remarriage of the wife. Said payments shall be a charge against the Estate of the husband and payable by the Estate of the husband in the event of the husband's death. The payments will terminate in the event of the wife's death.

4.

On September 1, 1994, the defendant shall pay a lump sum payment of alimony to the plaintiff in the amount of $32,400.00. This sum shall be a payment of lump sum alimony and shall be paid regardless of the death of the husband or the remarriage of the wife and shall be a charge against the Estate of the Husband. This sum shall not be paid in the event of the death of the wife, however.

However, the primary debt in this case is not a consumer debt, but is a medical malpractice lawsuit relating to debtor's pediatrics practice.

**5.**

Beginning on September 1, 1995, the husband shall pay to the wife as lump sum alimony the sum of $32,400.00. Provided further, that in the event the wife is remarried, said sum shall be in the amount of $20,000.00. This sum shall be payable regardless of the death of the husband or remarriage of the wife and shall be a charge on the Estate of the husband. This sum shall not be paid, however, in the event of the death of the wife.

**10.**

The defendant shall maintain a life insurance policy on his own life in a minimum amount of $250,000.00 with the plaintiff as beneficiary. Said sum shall be used to liquidate any and all obligations of the defendant to the plaintiff under the terms of this agreement in the event of the death of the defendant. This policy may be a decreasing term policy, but in any event shall never fall below the total of the payments due to the plaintiff by the defendant under the terms of this Agreement at any time. Provided further that said policy shall be kept in full force and effect by the defendant and he shall, each six months, provide proof of coverage to the plaintiff including the company this coverage this [sic] with and the amount of the coverage, as well as verification that the coverage is in full force and effect and premiums paid.

**12.**

The defendant shall obtain and maintain disability insurance on his own life until all alimony provided for in paragraphs 3, 4, 5, and 6 above is paid in full. This coverage shall at least equal at all times payment sufficient to cover the monthly obligations by the defendant to the plaintiff and the minor children under the terms of this Agreement. It being the full and express intent of the parties to provide disability coverage to protect the payments by the defendant to the plaintiff and minor children as called for in this Agreement. The defendant shall obtain and maintain disability coverage sufficient for this purpose.  * * *

**27.**

For tax purposes, the award of alimony contained in this agreement shall be considered as and is "alimony," pursuant to Section 719(b)(1)(B) [sic] of the Internal Revenue Code, Regulation 1.71–1T(b). It is the intent of the parties and it is the intent of the Court Order that shall incorporate this Agreement that payments shall be taxable to the plaintiff and shall be deductible to the defendant.

In addition to the provisions regarding support payments, the agreement divided all of the property of the parties. Mrs. Copeland retained the house and household items; Dr. Copeland retained the 1988 Oldsmobile and the parties' interest in a time share. The financial affidavit of Mrs. Copeland, signed during the divorce proceeding, indicates that this vehicle was held jointly. Another vehicle, titled only in Dr. Copeland's name, was driven by the elder son. Dr. Copeland also leased a new Mercedes. Neither party had any interest in a retirement plan.

The debtor attended school during much of the parties' nineteen-year marriage, and, at the time of the divorce, had obtained a medical doctorate, and was in residency at a local hospital. During the time Copeland was in school, Mrs. Copeland worked, taking home a meager $150 per week from her regular employment and an additional $100 per month selling Avon products. At the time of the divorce, Mrs. Copeland was not working. At the time the affidavit was signed, she believed Copeland's earning capacity to be $200,000 per year. The schedules reflect considerable earnings in the years prior to filing the bankruptcy and at the time of the filing. Dr. Copeland and his second wife filed the Chapter 7 bankruptcy case on September 10, 1992.

Under the Bankruptcy Code, debts in the nature of support are not dischargeable. 11 U.S.C. § 523(a)(5). *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983). Deter-

mining whether the obligations are in the nature of support or property settlement is a fact intensive inquiry, the focus of which is the intent of the parties. *See Steen v. Commissioner*, 923 F.2d 603, 606 (8th Cir. 1991). This Court must treat the settlement provisions according to their substance and not according to labels that the parties used or that the state court adopted in the decree or later orders. *Williams*, 703 F.2d at 1057.

The only fact which truly favors the debtor is that some of the payments to the spouse are in lump sum amounts. Under the agreement, Mrs. Copeland was to receive $2,200 per month in "alimony" and $500 per month in child support, for a total of $2,700 per month, or $34,200 per year. The decree provides for $2,200 "monthly" "lump sum" payments and two "lump sum" payments of $34,200, one each on September 1, 1994, and September 1, 1995. The fact that the "monthly" payments were described as "lump sum" causes some confusion which is not clarified by the parties. The initial monthly payments are not properly characterized as "lump sum" payments—they are in fact monthly support payments. The two yearly payments are more properly characterized as "lump sum." Thus, only the two $34,200 payments are even arguably in the nature of property settlement.

This single fact, that two of the payments over five years were factually "lump sum" payments, is overwhelmed by the evidence demonstrating that the payments were in the nature of support. Crucial to this determination is the parties' statements of their intent at the time of the divorce. It is noteworthy that only Mrs. Copeland testified regarding the intent of the parties. She expressly and credibly stated that the intent and understanding was that the payments were alimony. Mrs. Copeland not only presented a demeanor consistent with truthfulness, but her testimony was supported by the specific acts and written agreement of the parties.

Debtor never declared that the intent of the parties was that the payments be property settlement. Debtor never even declared that his own intent was that the payments were property settlement. This is not surprising to the Court inasmuch as debtor's federal income tax returns, signed under penalty of perjury, declare that the payments are alimony. The best that can be said for debtor's evasive testimony on the intent issue is that he did not wish to commit perjury before this Court.

The tax treatment chosen by the parties is relevant and very probative to the determination of the parties' intent. The tax treatment elected by the parties is consistent with the intent that the payments be alimony. Debtor claimed the payments as alimony, deductible on his federal income tax return, *see 26 U.S.C. § 215*, while Mrs. Copeland, as recipient, declared the payments as income, *see 26 U.S.C. § 71*.

The debtor asserts that the declaration of the nature of the payments for federal income tax purposes has no bearing on the nature of the payments for dischargeability purposes under the Bankruptcy Code. It is true that the Internal Revenue Code (26 U.S.C.) affords parties latitude in determining the tax consequences of their divorce. *Boucher v. Commissioner*, 710 F.2d 507, 512 (8th Cir.1983). When the settlement agreement is read in light of sections 71 and 215 of the Internal Revenue Code, it is clear that the tax consequences of the divorce were a major concern of the debtor. If the tax consequences were important to the parties, that consideration assists in determining the intent at the time of the divorce. That there were tax benefits associated with paying alimony makes it more probable that the debtor intended the payments to be alimony. Accordingly, the tax treatment and the information on the returns is indeed relevant. Further, debtor's attempt to have it both ways, declaring the payments are alimony for tax purposes, but not for bankruptcy purposes, is not well taken.

The assertion that the payments are property settlement presupposes that one party retains property of greater value than the property retained by the other party. In the instant case, the settlement

agreement appears to divide all of the property of the parties equally, without the necessity of payments to compensate for retention of property of lesser value. Neither party had any interest in a pension or benefit plan or other intangible asset which needed to be divided. Debtor's professional degree was not a marital asset under Georgia law. *See Lowery v. Lowery,* 262 Ga. 20, 413 S.E.2d 731 (1992).[2] Mrs. Copeland retained the family home together with its debt.[3] No evidence was presented by which the Court could conclude that debtor received property of greater value than that received by Mrs. Copeland. Accordingly, there is no evidence of any reason for debtor to make property settlement payments.

Numerous other facts demonstrate that the payments were intended as alimony:

* While not determinative, the fact that the parties characterized the payments as alimony rather than property settlement, supports the conclusion that the payments are alimony.

* The agreement provided for the division of property elsewhere in the document, separate from the alimony and child support provision.

* Although she would continue to receive support payments for the short period of five years, the final lump sum alimony payment was reduced if Mrs. Copeland remarried.

* The agreement provided that once the minor child reached the age of 18, the spousal support payments would increase by $500, the same amount as the child support. Thus, support to the household would remain stable while the children were in college. The elder son is in college in Georgia, and the second son reached majority last fall.

* Debtor was required to maintain insurance in amounts sufficient to cover the payments in the event of his death.[4] The decree specifically provided that the "policy may be a decreasing term policy, but in any event shall never fall below the total of the payments due to the plaintiff." Thus, the agreement ensured that Mrs. Copeland and the children would be provided for in the event of debtor's death or disability. Provisions for continuing support in the event of the payor's death indicate that the payments were intended as support. Indeed, Mrs. Copeland testified that the insurance provisions were placed in the agreement to ensure that she could "keep a stable home" for her sons and herself.

* While debtor asserts that Mrs. Copeland's attorney drafted the settlement agreement, the Court believes the testimony of Mrs. Copeland that both attorneys drafted the document. Thus, both parties had full voice in drafting and finalizing the document.

* The agreement provided that if Mrs. Copeland were to die, the payments would cease. This provision is necessary only if the payments are in fact in the nature of support. Obviously, if Mrs. Copeland died, support is unnecessary. However, if the payments were property settlement, her estate and heirs would be entitled to the property.

* The unequal earning capacity also indicates that the payments were in the nature of support. While debtor was in school, Mrs. Copeland worked for a wage of approximately $150 per week with a small supplement from selling Avon products. Once debtor completed his lengthy schooling, Mrs. Copeland no longer worked. Debtor earned approximately $90,000 in the year prior to the divorce, with an expectancy of earning much greater sums in the future. The disparate financial abilities of the parties coupled with the financial need

---

2. While this case was decided after the divorce at issue, the Court has been directed to no authority indicating that the Georgia Superior courts applied a different rule.

3. The debtor assumed all other debts, the vast majority of which were loans for payment of his medical education.

4. There was evidence that the debtor violated the agreement in this respect. Clearly, the insurance provisions are also in the nature of support, not property settlement. Accordingly, the bankruptcy will not discharge the insurance obligations.

of Mrs. Copeland indicate that the payments are in fact alimony.

■ The tax treatment by the parties, the characterization by the parties, the statements of the parties in court, the insurance provisions, the termination of payments upon the death of Mrs. Copeland, the unequal earning capacity of the parties, and the fact that the payments were needed to meet the daily needs of Mrs. Copeland and the children overwhelmingly indicate that the payments, as well as the insurance obligations, were in the nature of support and were not a division of property between the parties. Of great significance to the Court is the very credible testimony of Mrs. Copeland that the payments were intended to be alimony. Debtor never expressly testified as to his intent. Indeed, his testimony in this regard was evasive and not credible. Accordingly, judgment will be entered in favor of the defendant Marsha Ann Copeland.

**ORDERED**

**IT IS SO ORDERED.**

### *JUDGMENT*

This action came on for trial before the Court, Honorable Mary Davies Scott, U.S. Bankruptcy Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

**It is Ordered and Adjudged** that the debt of the debtor Albert Copeland, Jr. set forth in the Settlement Agreement dated March 20, 1990, and incorporated into a Divorce Judgement and Decree filed on April 6, 1990, in the Superior Court for the County of Lowndes, State of Georgia, owed to Marsha Ann Copeland, is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

**IT IS SO ORDERED.**