In the Matter of Elizabeth D. JOSEPH, Debtor.

Bankruptcy No. 2–92–02614.

United States Bankruptcy Court, D. Connecticut.

Aug. 3, 1993.

Catherine P. Kligerman, Hartford, CT, for Marilyn Paula Seichter, creditor-objector.

Ronald I. Chorches, Chorches & Novak, P.C., Wethersfield, CT, for trustee-objector, Anthony S. Novak.

John Serrano, Lepine & Serrano, West Hartford, CT, for debtor.

## MEMORANDUM OF DECISION ON OBJECTIONS TO CLAIM OF EXEMPTIONS

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### ISSUE

The matters before the court are the timely-filed objections of Marilyn Paula Seichter, a creditor, and Anthony S. Novak, the Chapter 7 Trustee, to property claimed as exempt under Code § 522 by Elizabeth D. Joseph, the debtor.[1] The debtor in her chapter 7 petition filed on June 26, 1992 claimed as exempt, pursuant to Code § 522(d)(10)(D), her right to receive a "$150,000 lump sum payment due to debtor per divorce decree." [2] Section 522(d)(10)(D) allows a debtor to exempt from property of the estate the debtor's right to receive "alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

---

**1.** *Fed.R.Bankr.P. 4003. Exemptions.*

(a) *CLAIM OF EXEMPTIONS.* A debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets....

(b) *OBJECTIONS TO CLAIM OF EXEMPTIONS.* The trustee or any creditor máy filed objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors....

(c) *BURDEN OF PROOF.* In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

**2.** The debtor has appealed certain aspects of the state-court ruling, not including the lump-sum alimony award.

Both objectors contend that the lump-sum alimony is not alimony but represents a division of marital property, or, in the alternative if found to be alimony, that the entire award is not reasonably necessary for the debtor's support. The 23–page memorandum of decision of the state court (Dranginis, J.) in the marriage-dissolution action, and a short hearing held on June 8, 1993, form the basis for the following background.

## II.

### BACKGROUND

The debtor's marriage to Richard J. Joseph (Joseph), which took place on June 1, 1985, lasted five years. On August 24, 1990, Joseph brought an action in the Connecticut Superior Court to dissolve the marriage. At the time of the marriage Joseph was a practicing attorney, with custody of two children from a prior marriage, and the debtor was a registered nurse, not previously married. The couple had twin boys born on December 31, 1987. The dissolution action was lengthy and bitterly contested. The state court dissolved the marriage, awarded custody of the children to Joseph, and in a memorandum of decision (decision) dated December 13, 1991, entered various orders concerning the distribution of assets, periodic and lump-sum alimony and counsel fees.

The decision extensively discussed the parties' marriage, the impact of the debtor's subsequent illness, Joseph's reaction to the illness, and Joseph's obligation to provide financial assistance to the debtor.

On July 1, 1989, the [debtor] went to see Dr. Wells and complained about her inability to function. The impression that Dr. Wells noted at that time was profound depression with psychotic features. At that time Dr. Wells recommended immediate psychiatric referral. . . .

The ultimate diagnosis of bipolar disorder was not made until [the debtor's] second hospitalization at the Institute of Living. . . .

Dr. Barren indicated that [the debtor's] depression was recurrent, that she had difficulty completing a sentence and extreme difficulty in making ordinary daily decisions. The report states, 'This has been going on for months.' Dr. Barren indicated that [the debtor] had been unable to follow an outpatient treatment program and seemed to be terribly frightened of the need to acknowledge the existence of psychiatric disorder. . . .

*Decision* at 13–14. Judge Dranginis noted:

[The debtor] has the capacity to function if she is compliant with medication and continues in psychotherapy. She is a registered nurse, and is employable. . . . She is employed part-time and should be employed on a full-time basis post judgment.

[The debtor] has not demonstrated a capacity to manage money or accumulate assets. Because of her dependent personality, and the effort that she will need to expend to manage her psychiatric disorder, it is unlikely that she will be able to take care of her immediate needs, let alone establish a fully-equipped home for the children as they spend time with her, without help from Mr. Joseph.

*Id.* at 9.

[T]he extent and vitriolic nature of the litigation did absolutely nothing to clarify issues; rather it seriously imperiled the assets of the parties. In terms of the court's orders and the distribution of marital property, the cause of that diminished value of assets lie squarely with [the debtor].

. . . . .

Mr. Joseph must understand that he contributed to his wife's anger, and the court's order for periodic and lump sum alimony are designed to allow him time to recover economically while acknowledging financial responsibility to the mother of these young children.

*Id.* at 18–19.

In her rulings, Judge Dranginis permitted Joseph to retain title to (1) the marital home (purchased by him prior to the marriage); (2) Florida real estate (a premarital

asset); (3) Microgenesis stock (purchased with law partnership funds); (4) certain rental property purchased by Joseph and his law partners which was partially in foreclosure and "income-draining rather than income-producing"; and (5) a profit sharing plan primarily funded prior to the marriage. *Id.* at 20–21.

The court, after ordering Joseph to transfer a 1987 Audi automobile to the debtor, awarded her non-modifiable periodic alimony for six years "[w]hile the [debtor] is in the process of normalizing her life." *Id.* at 21. The court ordered Joseph to pay the debtor $300.00 per week for one year, $200.00 per week for the following two years, and $100.00 per week for three years thereafter.

With respect to lump-sum alimony, the decision contains the following order:

> 8. *Lump Sum Alimony.* [Joseph] shall pay to the [debtor] the sum of fifty thousand ($50,000.00) dollars within ninety days to the order of Attorney Charles Brower.[3] [Joseph] shall pay the sum of twenty-five ($25,000.00) dollars [sic] on July 1, 1993 to [debtor] payable to Attorney Brower. [Joseph] shall pay the [debtor] the sum of seventy-five thousand ($75,000.00) dollars on December 1, 1996, five years hence.

*Id.* at 22.

In a subsequent provision (paragraph 9), Judge Dranginis ordered that Joseph pay Bridget G. Jenkins, counsel for the children, $26,773.50 within thirty (30) days. Judge Dranginis also found that the debtor was "responsible for twenty-four ($24,-000.00) dollars [sic] of attorney Jenkins' total bill of $36,273.50, which "shall be credited to [Joseph] and deducted from that payment of lump sum alimony of $50,-000.00 due to [debtor] within 90 days." *Id.*

The debtor, in her bankruptcy schedules, lists Charles Brower, Esq. as a creditor due $58,967.86 for attorney's fees, Bridget Jenkins, Esq. as a creditor due $24,000 for attorney's fees, and the objector, Marilyn

Paula Seichter, as a creditor due $61,525 for attorney's fees.

At trial the debtor testified that in May 1991 she resumed working and is presently employed by the State of Connecticut at a mental health facility earning a biweekly net income of $1,021.78. The periodic alimony is her only additional income. She has been institutionalized for psychiatric reasons three times since 1989 for periods of three to six weeks; she is dependent on daily medication, and sees her physician monthly. The debtor is essentially assetless, and her medical insurance covers only a portion of her mental illness medical expenses. The debtor's current monthly expenses, including medical expense of $470.00, exceeds her total monthly income by approximately $800.00.

### III.

### DISCUSSION

### A.

### *Whether The State–Court Award Is Alimony Or A Property Settlement*

■ It is now well settled that in determining Code § 523(a)(5)[4] *dischargeability* issues of debtor's obligations to a former spouse, bankruptcy courts consider all relevant facts and circumstances and are not necessarily bound by labels placed upon the obligation by the parties or by the state court. *See Forsdick v. Turgeon,* 812 F.2d 801, 802–803 (2d Cir.1987); *Persechino v. Ammirato (In re Ammirato),* 74 B.R. 605, 607–08 (Bankr.D.Conn.1987). Code § 523(a)(5) rulings were considerably aided by both the language of § 523(a)(5)(B) that a liability designated as alimony must "actually" be "in the nature of alimony", and that section's legislative history. *See Forsdick* at 802–803.

■ There is, however, little case authority on whether the same principle applies to

---

**3.** Attorney Charles Brower was one of the debtor's attorneys.

**4.** Section 523(a)(5) provides that a discharge does not discharge a debt to a former spouse for alimony.

Code § 522(d)(10)(D) exemption issues, when the state court has labeled an award as "alimony." The only ruling located dealing with a claimed alimony exemption stated, without discussion, that labels placed on such awards by state courts are not binding in bankruptcy courts. *In re Benjamin*, 136 B.R. 574, 576 (Bankr. S.D.Fla.1992). I believe the *Benjamin* holding is correct, notwithstanding the absence of any language in § 522(d)(10)(D) comparable to § 523(a)(5)(B), and the lack of any helpful legislative history. There is no readily apparent reason why a bankruptcy court should use different standards in reviewing alimony awards in the nondischargeability instance and in the exemption instance. The overarching principle is that the primacy of the bankruptcy laws may not be subverted by labels placed on obligations by the parties themselves or by nonbankruptcy courts.

■ In the present matter, I conclude that Joseph's obligation to the debtor described as lump-sum alimony was not part of a masked property settlement, and is money intended for the debtor's support. Connecticut courts use property settlements to equitably divide the ownership of the parties' property, while periodic and lump-sum alimony are based primarily upon a continuing duty to support. *See Blake v. Blake*, 211 Conn. 485, 498, 560 A.2d 396 (1989). Judge Dranginis clearly allowed Joseph to retain the property that, for the most part, was in his name prior to the marriage to the debtor. The lump-sum alimony provision was to supplement the periodic alimony in assisting the debtor with her continuing illness and the need to maintain a separate home for herself.

### B.

### *The Reasonably Necessary Standard*

■ Neither the court nor the parties have located any authority which explicates the "reasonably necessary" provision of § 522(d)(10)(D). That phrase appears elsewhere in the Code. *See, e.g.,* Code §§ 522(d)(10)(E); 522(d)(11)(B), (C) and (E); 1225(b)(2); and 1325(b)(2). This court has construed the reasonably necessary standard in Code § 522(d)(10)(E) which deals with an exemption for a debtor's right to receive a payment under a pension or similar plan "on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." *See Warren v. Taff (In re Taff)*, 10 B.R. 101, 107 (Bankr.D.Conn.1981) (the reasonably necessary standard "requires that the court take into account other income and exempt property of the debtor, present and anticipated ... and that the appropriate amount to be set aside for the debtor, ought to be sufficient to sustain basic needs not related to [the debtor's] former status in society or the lifestyle to which [the debtor] is accustomed but taking into account the special needs that a retired and elderly debtor may claim.")

The debtor and the trustee in their post-hearing briefs both seek to apply the *Taff* construction of reasonably necessary to the exemption provisions of § 522(d)(10)(D). Following the parties' lead and utilizing the *Taff* standard, I conclude that the lump-sum alimony award is reasonably necessary in full for the debtor's support. The debtor is entitled personally to receive only $126,000 of the award as Joseph is directed by the state court to pay the initial $24,000 to satisfy the debtor's obligation to Attorney Jenkins. The debtor and the trustee, in supplemental memoranda, concur that the unusual provision requiring Joseph to make the first two lump-sum alimony payments to Attorney Brower was *not* to effect a payment towards the debtor's attorneys' fees. Both posit that Judge Dranginis required the checks to be payable to Attorney Brower because, as stated in the trustee's supplemental memorandum at p. 1, it was "for her own protection as the State Court made a specific finding that the Debtor 'has not demonstrated a capacity to manage money or accumulate assets.'"

I find, taking into account the nature of the debtor's illness, her history of hospitalization and the likelihood of rehospitalization, her need for daily medication, her

present deficit income position and her lack of assets, that the remaining portion of the lump-sum alimony is reasonably necessary for her special needs and support. *Cf. In re Cramer,* 130 B.R. 193, 195 (Bankr. E.D.Pa.1991) (factual inquiry into assets and probable income and expenses made to decide if entire § 522(d)(11)(E) exemption [payment for loss of future earnings] reasonably necessary for debtor's support); *In re Riegodedios,* 146 B.R. 691, 692 (Bankr. E.D.Va.1992) (application of reasonably necessary standard in § 1325(b)(2) context utilizing *Taff* test).

IV.

## CONCLUSION

The parties objecting to the lump-sum alimony claimed as exempt by the debtor have not carried their burden of proof, and their objections are hereby denied. It is

SO ORDERED.

## JUDGMENT

The objections of Marilyn Paula Seichter, creditor and Anthony S. Novak, trustee, to property claimed as exempt by Elizabeth D. Joseph, the debtor, having been heard, and the court on August 3, 1993 having issued a Memorandum of Decision containing findings of fact and conclusions of law, it is

ORDERED, ADJUDGED AND DE-CREED that the objections are overruled.