In re Michael Dean DRENNAN.

Nancy DRENNAN, Plaintiff,

v.

Michael Dean DRENNAN, Defendant.

Bankruptcy No. 93–40680.
Adv. No. 93–4084.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Nov. 9, 1993.

James Lawson, Little Rock, AR, for plaintiff.

Mark Riable, Little Rock, AR, for defendant.

Richard Ramsay, Little Rock, AR, U.S. Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the trial of the complaint to determine dischargeability of debts. The plaintiff, the former wife of the debtor, seeks a declaration that certain debts are not dischargeable in the debtor's bankruptcy, pursuant to section 523(a)(5).

The parties were married for a period of ten years, divorcing in August 1991. During the divorce proceedings, the debtor was represented by counsel, Mark Riable, the same counsel who represents him in his bankruptcy case, filed just twenty months later, on April 1, 1991. Mrs. Drennan could not afford counsel during the divorce proceedings and was, thus, unrepresented. Mr. Riable prepared, and both parties signed, a document entitled "Property Settlement Agreement," which lists and designates the rights of the parties. It is uncontested that the language of the agreement defines all rights and makes all designations of rights in terms of a "property settlement."

■ The Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of the court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that
* * *

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5). Thus, under the Bankruptcy Code, debts in the nature of support are not dischargeable in bankruptcy. *See Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983); *Mencer v. Mencer*, 50 B.R. 80, 83 (Bankr.E.D.Ark. 1985). In determining whether the obligations are in the nature of support or property settlement, the focus of the inquiry is upon the facts and circumstances at the time of the divorce. The current needs of the parties are not relevant to the determination. *Draper v. Draper*, 790 F.2d 52, 54 & n. 3 (8th Cir.1986).

■ The debtor's first argument is that, pursuant to subparagraph (B) of section 523(a)(5), the language in the settlement agreement controls the conclusion as to the nature of the payments. Debtor formulates a two-prong test in which he requires plaintiff to demonstrate not only that the obligations are in the nature of support, but also that the chancery court expressly designated the obligations as support. Thus, debtor asserts, since the marital settlement agreement, written by his attorney, speaks only in terms of "property settlement," the plaintiff cannot, as a matter of law, meet her burden of proof. This is an erroneous reading of the statute for two reasons.

■ First, it is not supported by the language of the statute. Paragraph (5) of subsection (a) establishes the principle that alimony is nondischargeable. Subparagraph (B) states that a debt merely *designated* as support is dischargeable unless it *actually is* support. Thus, the language of the statute reinforces the duty of a court to look behind the language of any agreement to determine the true intent of the parties in the designation of rights and obligations. *Sampson v. Sampson*, 997 F.2d 717, 722 (10th Cir.1993) ("Congress, by directing federal courts to determine whether an obligation is 'actually

in the nature of alimony, maintenance, or support,' sought to ensure that § 523(a)(5)'s underlying policy is not undermined either by the treatment of the obligation under state law or by the label which the parties attach to the obligation."). There is no requirement in the statute that an order or agreement designate the nature of the obligation.

▪▪▪ Second, debtor's argument is not supported by the cases interpreting the statute. Indeed, debtor's argument is in conflict with every case in this circuit and district, as well as virtually every case decided by the federal courts. In determining the dischargeability of a debt under section 523(a)(5), a court must treat the payments according to their substance and not according to labels that the parties used. *In re Williams,* 703 F.2d 1055, 1057 (8th Cir.1983); *Copeland v. Copeland,* 151 B.R. 907, 910 (Bankr.W.D.Ark.1993) (Scott, J.); *Pierce v. Pierce,* 142 B.R. 308 (Bankr.E.D.Ark.1992) (Scott, J.); *In re Ramey,* 59 B.R. 527, 530 (Bankr.E.D.Ark.1986) (Mixon, J.); *In re Mencer,* 50 B.R. 80, 83 (Bankr.E.D.Ark.1985) (Mixon, J.); *In re Long,* 39 B.R. 535, 537 (Bankr.E.D.Ark.1984) (Fussell, J.); *Brody v. Brody,* 3 F.3d 35 (2d Cir.1993); *Sampson v. Sampson,* 997 F.2d 717 (10th Cir.1993); *Davidson v. Davidson,* 947 F.2d 1294, 1296–97 (5th Cir.1991); *In re Gianakas,* 917 F.2d 759 (3d Cir.1990); *Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir.1989) (per curiam); *Forsdick v. Turgeon,* 812 F.2d 801, 802–03 (2d Cir.1987); *In re Benich,* 811 F.2d 943, 945 (5th Cir.1987); *In re Goin,* 808 F.2d 1391, 1392 (10th Cir.1987); *Tilley v. Jessee,* 789 F.2d 1074, 1077, 1078 (4th Cir.1986); *Harrell v. Sharp (In re Harrell ),* 754 F.2d 902, 906 (11th Cir.1985); *Stout v. Prussel,* 691 F.2d 859, 861 (9th Cir.1982); *In re Jo-seph,* 157 B.R. 514, 517 (Bankr.D.Conn.1993); *Townsend v. Townsend,* 155 B.R. 235, 238 (Bankr.S.D.Ala.1992); *Stitham v. Stitham,* 154 B.R. 1, 3 (Bankr.D.Me.1993); *Smith v. Smith,* 152 B.R. 604, 606 (Bankr.W.D.Mo. 1993); *Garrard v. Garrard,* 151 B.R. 598, 601 (Bankr.M.D.Fla.1993); *James v. Moore (In re James ),* 150 B.R. 479, 483 (Bankr.M.D.Ga. 1993); *Rump v. Rump,* 150 B.R. 450, 453 (Bankr.E.D.Mo.1993); *Burns v. Burns,* 149 B.R. 578, 581 (Bankr.E.D.Mo.1993). *See Morel v. Morel,* 983 F.2d 104, 105 n. 3 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2423, 124 L.Ed.2d 645 (1993); *Adams v. Zentz,* 963 F.2d 197, 199 (8th Cir.1992); *Zalenski v. Zalenski,* 153 B.R. 1, 2 (Bankr. D.Me.1993); *Cochard v. Cochard,* 152 B.R. 745 (Bankr.E.D.Mo.1993).[1] *See also Steen v. Commissioner,* 923 F.2d 603, 606 (8th Cir. 1991). It is the intent of the parties at the time of the agreement that is determinative of whether the payments are in the nature of support or are a division of property. The terms of the agreement are merely one factor among many to be analyzed in determining the nature of the obligation. *See Ramey v. Ramey,* 59 B.R. 527, 530 (Bankr.E.D.Ark. 1986) (outlining nonexclusive list of factors).[2]

The Court must apply the various factors to the particular obligations plaintiff seeks to have discharged. There are five separate obligations Mrs. Drennan seeks to have held nondischargeable:

(1) Monthly payments to Ford Motor Credit on an account with an approximate balance of $6,174.22, representing payments for a 1988 Chevrolet Van awarded to and possessed by plaintiff.[3]

(2) A lump sum payment, to be paid from one-half of the cash value of defendant's life

---

1. Although the Court cites only those cases in 1993, even a cursory review of the case-law indicates that the rule is long-standing.

2. While it is true that the language in a divorce decree or settlement agreement is one factor to be considered in determining whether an obligation is in the nature of support, that factor deserves little weight in this particular case. The agreement was drafted by debtor's counsel, who was free to employ language he deemed beneficial to his client. Mrs. Drennan had no attorney to protect her rights in this matter for the simple reason she could not afford one. The Court believes Mrs. Drennan's testimony that debtor, when she threatened that she would find counsel, persuaded her not to do so, agreeing instead to make payments on the van. In light of the disparate legal advice available to the parties, it is appropriate to give little weight to the characterizations contained in the settlement agreement.

3. The payments on the debt are in arrears due to defendant's nonpayment.

insurance policy.[4]

(3) Monthly payments in the sum of $100.00 until August 1993, or until plaintiff remarries.

(4) A sum representing one-fourth of defendant's 1991 income tax refund.

(5) One-half of defendant's retirement with Union Pacific Railroad earned during the term of the marriage.

A factor of great import to the Court was the credibility of the witnesses in this case. The sole witnesses were the plaintiff and debtor defendant, whose testimony often conflicted. The Court finds that Nancy Drennan had a demeanor consistent with truthfulness. The Court believes all of her testimony.

Mr. Drennan's demeanor, in contrast, was not consistent with truthfulness. Indeed, it was clear from the his demeanor that he was, in large part, merely parroting phrases or terms given to him in coaching sessions prior to trial, and, during trial, as his attorney persistently led him through his testimony.[5] The cadence Mr. Drennan's speech also reduces his credibility. At times, when using language unfamiliar to him, his speech was hesitant and stilted. In contrast, when he was permitted to formulate his own statements, the fluidity of his speech noticeably improved. For example, when he stated that the $100 monthly payments was "compensation for the things I received for the divorce decree," his speech was markedly stilted and hesitant. Indeed, the falsity of this statement was borne out two sentences later when, responding to an open question, he stated in a more natural manner, that the "$100 payments was [sic] considered alimony." When asked a question to which he had a rehearsed answer, he had difficulty remembering the answer, stammered, and used terms with which he appeared to be unfamiliar and uncomfortable. Debtor's general demeanor, as well as his shifting manner of language and speech usage, undermine his credibility.

Bearing the credibility of the witnesses in mind, the Court now examines the particular obligations in light of the factors outlined by this Court in *Ramey*, 59 B.R. at 530. These factors indicate that each of the obligations is in the nature of support rather than merely a division of property.

■ The debtor conceded that the $100 per month payment was alimony. In response to the direct question by his attorney as to whether he agreed to alimony, debtor stated "There is a $100 payment that was considered alimony." Other facts indicate that the monthly payment is alimony. Each of the checks submitted to the Court contain the words "alimony" on the memo line. At the time of the divorce there was a great disparity of income between the parties, earning history, and earning capacity. Indeed, in 1991, at the time of the divorce, Mrs. Drennan worked part-time at a clerical job, earning $6.00 per hour, while Mr. Drennan earned $14.00 per hour for a yearly wage of over $30,000. The parties specifically discussed the fact that Mrs. Drennan could not support herself on her earnings and pay bills incurred during the marriage such that it was understood and agreed by the individuals that spousal support was necessary and intended.

■ In the settlement agreement, Mr. Drennan agreed to make payments on the Chevrolet van retained by Mrs. Drennan. Again, the parties specifically discussed the fact that Mrs. Drennan did not earn enough money to make the payments on the van and that she could not afford to drive the van unless he made the payments. In fact, she retained the van, in part, because it would be, long-term, a cheaper vehicle to maintain.

---

4. The debtor apparently represented to Mrs. Drennan, during the divorce proceedings, that the cash value of the insurance policy was $1,000. From the terms of the agreement and from the testimony, it is unclear to the court whether only a lump-sum payment of $500, or one-half the amount of the actual cash value, was intended. The Court need not determine the precise intent or the actual value of the policy in this adversary proceeding. That is a matter more properly left to the state court. *See* note 6, *infra*.

5. Since the leading questions were not objected to, the responses of the debtor are in evidence. However, the leading nature of the direct testimony weighs heavily upon Drennan's credibility.

Mrs. Drennan testified that she could not afford the maintenance on the parties' other marital vehicle. These facts, in addition to those described in the previous paragraph and the demeanor of the witnesses compel this Court to conclude that the parties intended that the payments on the van be in the nature of support.

■ Debtor agreed to surrender $500 of the cash value of his insurance policy with which, it was understood by both parties, Mrs. Drennan would find a place to live as she could not afford to reside in the marital residence. Her testimony in this regard is supported by the fact that when the money was not forthcoming, she was forced to move in with her son. She clearly could not afford, at the time of the divorce, to find an alternate residence without those funds. Mrs. Drennan told the debtor at the time of the divorce she needed those funds to live. The Court believes her and moreover, believes that the debtor knew the purpose for which the funds were needed, and that he intended, when he agreed to pay the $500, the funds to be support.

■ Debtor agreed to deliver to Mrs. Drennan one-fourth of his income tax refund for the 1991 taxable year. They both intended that she would use the funds to live—for insurance on the van and for other bills. Her testimony of the purpose is corroborated by the fact that, when the funds were not forthcoming, she was required to borrow money to pay for insurance on the van.

■ The marital settlement agreement provided that Mrs. Drennan would be entitled to one-half of debtor's retirement benefits earned during the life of the marriage. Debtor appears to argue that since the amount to be paid is tied to the length of the marriage, the benefits are necessarily prop-

erty settlement. The Court disagrees. There was no evidence before the Court that Mrs. Drennan has any pension benefits accruing to her. Indeed, in light of the nature of her employment at the time of the divorce, it is very unlikely that she has any such benefits. The disparity of employment and earning capacities, as well as the other factors discussed above, indicate that the obligation relating to retirement benefits is in the nature of support.[6]

■ Finally, debtor agreed to assume all of the joint credit card debts, specifically, the amounts owed on the Sears and Visa charge accounts. It was expressly agreed between the parties that debtor assumed these obligations because Mrs. Drennan could not afford to pay these debts. Debtor knew and understood she could not support herself, even with his contribution of $100 per month and payment on the van, and pay these debts. In light of this fact, and the facts previously discussed, the Court is, once again, compelled to the conclusion that this obligation, assumed in the settlement agreement, was in the nature of support.

Several facts indicate that each of the obligations undertaken by the debtor in the settlement agreement is in the nature of support, rather than a property settlement. The parties had few possessions when they divorced, and those assets, furniture, clothes, and vehicles, were divided. The debtor had much higher income, a better earning history, a more substantial and stable earning capacity that Mrs. Drennan. Mrs. Drennan needed each of the items described for her support. Both parties were fully aware of her needs, her earning capacity, and her limited financial resources. In light of these factors, together with the determination of credibility of the witnesses, the parties in-

6. Of course, even were the retirement benefits not in the nature of support, the benefits may be Mrs. Drennan's separate property such that she would be entitled to receive pension payments when they are due, in years hence. See Bush v. Taylor, 912 F.2d 989 (8th Cir.1990); Jackson v. Johnson (Johnson), 113 B.R. 514 (Bankr. W.D.Ark.1989) (Mixon, J.). That issue need not be determined in this proceeding and is in fact more properly the subject of a motion in the state court requesting a Qualified Domestic Relations Order regarding the pension funds. Even debtor's attorney, incredibly, acknowledged the necessity of this protective order although he apparently did not take care of this during the divorce proceedings wherein he served as the only attorney. At this hearing, debtor's attorney seemed to argue that Mrs. Drennan's failure to obtain such an Order was somehow her fault. Now that Mrs. Drennan is represented by competent counsel, perhaps the appropriate proceeding will be initiated.

tended that each of the obligations were assumed by debtor for Mrs. Drennan's support. Accordingly, the obligations are nondischargeable in this bankruptcy case pursuant to 11 U.S.C. § 523(a)(5).

**ORDERED** that the debts owed to Nancy Dean Drennan by debtor Michael Dean Drennan, described in the Property Settlement Agreement, signed by the parties on July 31, 1991, are determined nondischargeable in this bankruptcy proceeding pursuant to 11 U.S.C. § 523(a)(5).

**IT IS SO ORDERED.**