**154**

In re Robert G. DITTMER, Luella Dittmer, Debtors.

Steven E. SIEBERS, Trustee, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE COR-PORATION, Robert G. Dittmer and Lu-ella Dittmer, Defendants.

Bankruptcy No. 87–70781.

Adversary No. 87–7271.

United States Bankruptcy Court, C.D. Illinois.

July 26, 1988.

Steven E. Siebers, Quincy, Ill., Trustee.

Dennis W. Gorman, Quincy, Ill., for FDIC.

Thomas W. O'Neal, Carthage, Ill., Hu-bert Staff, Quincy, Ill., for Dittmer.

## OPINION

LARRY L. LESSEN, Chief Judge.

This matter is before the Court on the FDIC's Motion For Entry of Additional Findings of Fact and To Alter and Amend Judgment.

The FDIC asks the Court to enter additional findings of fact and/or conclusions of law to the effect that 1) the FDIC is an agency of the United States, 2) the FDIC acquired a lien or security interest in the and to the Debtors' equipment, livestock, crops, feed, seed and other supplies as assignee pursuant to 12 U.S.C., Sec. 1823(c), as evidenced by, inter alia, the purchase and Assumption Agreement, Contract of Sale and the Order of the Eighth Judicial Circuit, Adams County, Illinois, approving the sale and transfer, 3) the rights of the FDIC as to the specific assets are governed by federal law, not state law, 4) the FDIC, as an agency of the United States, is not required to perfect its interest in the assets under Article 9 of the Uniform Commercial Code, or any other state law, and 5) the FDIC holds a perfected lien or security interest in and to the assets pursuant to federal law.

It is undisputed that the FDIC is an agency of the United States. It is further undisputed that the FDIC in its corporate capacity acquired a lien as assignee in assets of the Debtor as claimed. The Court

grants the FDIC's motion as to the entry of these findings of fact.

The dispute between the parties centers on the remaining findings or conclusions sought by the FDIC, having to do with whether the FDIC's lien is perfected. If, as the FDIC asserts, the Illinois Commercial Code provision requiring filing of a continuation statement to perfect such a lien does not apply to the FDIC, then the FDIC holds a perfected lien and consequently prevails. If, on the other hand, the state law does apply, then, as the Court has already held, the FDIC's failure to comply with that provision leaves the FDIC with an unperfected lien, meaning the Trustee prevails.

 In cases involving the rights of the United States arising under nationwide federal programs, federal law governs. *United States v. Kimbell Foods*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). However, in giving content to "federal law," federal courts are "to fill the interstices of federal legislation 'according to their own standards.'" *Id.* at 727, 99 S.Ct. at 1458 (quoting *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943). In determining whether to adopt state law as the federal rule of decision, federal courts are to consider: 1) whether there exists Congressional directive to the contrary; 2) whether there is a need for a nationally uniform body of law; 3) whether application of state law would frustrate specific objectives of the federal program; and 4) the extent to which application of a federal rule would disrupt commercial relationships predicated on state law. *Id.* 440 U.S. at 728–729, 99 S.Ct. at 1458–1459.

 In the absence of ready-made federal common law, and in light of the general reluctance to displace state law without explicit statutory or constitutional direction to do so, the presumption is that state law is adequate and should be adopted by the federal court as the rule of decision. *See United States v. Kimbell Foods, supra* at 740, 99 S.Ct. at 1464–1465; *FDIC v. Braemoor Associates*, 686 F.2d 550, 554 (7th Cir.1982); *Powers v. United States*

*Postal Service*, 671 F.2d 1041, 1045 (7th Cir.1982); *Warner v. FDIC*, 605 F.Supp. 521, 526 (S.D.Ohio 1984), rev'd on other grounds 798 F.2d 167 (6th Cir.1986).

 Considering the relevant factors enunciated in *Kimbell*–Congressional directive to the contrary, need for a uniform body of law, potential for frustration of specific objectives of the federal program, and extent to which a federal rule would disrupt commercial relationships predicated on state law—the Court concludes that the FDIC has not overcome the presumption that state law should apply in this case.

There is no Congressional directive contrary to the UCC provision requiring proper filing of a continuation statement.

The Uniform Commercial Code, as enacted in Illinois, is close to being a nationally uniform body of law. Adopted with minor variations by all of the states except Louisiana, the UCC is *designed* to meet the need for uniform standards within the context of commercial relationships. Thus, application of the UCC provision requiring the proper filing of a continuation statement would in no way interfere with national uniformity in the FDIC's operation. Rather, use of the UCC would appear to be a handy way to establish ready-made essentially uniform law in the implementation of a federal program, as long as such use would not frustrate specific objectives of the program.

The FDIC has presented no persuasive evidence as to how application of the UCC-required filing of a continuation statement would hinder its operation. Indeed, in this case the FDIC did file two continuation statements regarding the Debtors' assets; the problem arose in that the statements filed failed to comply with the requirements pertaining to assignees. The FDIC's acts in filing reflect both its awareness of the UCC provision and its ability to comply therewith. These acts further reflect the FDIC's own understanding that it falls within the scope of this filing provision. Counsel for the FDIC maintained in oral argument that these FDIC attempts at compliance should be considered "surplus-

age," and that requiring FDIC counsel to keep abreast of recording requirements of the different states would be a costly proposition. As in *Kimbell, supra,* "the agenc[y's] own operating practices belie[s] [its] assertion that a federal rule of priority is needed to avoid the administrative burdens created by disparate state commercial rules." *Kimbell* 440 U.S. at 732, 99 S.Ct. at 1460. Moreover, the FDIC is required by federal statute to operate within the constraints of state law when acting in its capacity as receiver, *see* 12 U.S.C. Secs. 1819, 1821(e), suggesting that any claim by the FDIC of unfamiliarity with state laws is disingenuous. Requiring the FDIC to file proper continuation statements would neither be unduly burdensome nor hinder FDIC operations.

The Court has already touched on the extent to which a second set of federal rules as to priority would disrupt commercial relationships predicated on state law. "In structuring financial transactions, businessmen depend on state commercial law to provide the stability essential for reliable evaluation of the risks involved." *Kimbell* 440 U.S. at 739, 99 S.Ct. at 1464. "When it is not necessary to have a national rule, it is necessary not to have one. Lenders (as in *Kimbell*), landlords (as in *Powers*) and superintendents of schools (as here) learn the set of rules governing their conduct, and they are entitled to assume that the rules apply consistently." *Morgan v. South Bend Community School,* 797 F.2d 471, 476 (7th Cir.1986). General creditors are entitled to the same assumption. Application of an "FDIC rule" different from that imposed on other creditors, entitling the FDIC to a perfected interest despite its failure to file a proper continuation statement, would work a disservice on other creditors.

Since there is no ready-made body of federal common law at hand, since the UCC as enacted by Illinois provides an essentially uniform body of law, since with respect to application of the filing provision at issue there is no frustration of FDIC objectives, and since to hold otherwise would disrupt well-established commercial rules, the Court holds that the FDIC is bound by the Illinois Commercial Code provision requiring the filing of a proper continuation statement. *See* Ill.Rev.Stat.1985 Ch. 26 Sec. 9–403(3).

The FDIC relies on *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), asserting that the United States, and the FDIC as an agency thereof, cannot be deprived of its property rights due solely to the application of state laws. In *Summerlin,* the Supreme Court held that a state statute of limitations in probate matters could not defeat a claim of the Federal Housing Administrator as assignee against a decedent's estate. *Id.* However, the holding in *Summerlin* does not purport to exempt the United States and its agencies absolutely from application of state law affecting property rights. Indeed, the Supreme Court in *Summerlin* stated:

> The State Court treated [this] case as in the same category as one of 'the statutes proving for conveyancing and marketing negotiable instruments, and conducting other business relations.' But this is not a case relating to the application of the law merchant as to the transfer of negotiable paper and the diligence necessary to charge an endorser or as to the incurring by the United States of certain responsibilities by becoming a party to such paper. (citations omitted). *Id.* at 416, 60 S.Ct. at 1020.

Thus, *Summerlin* paved the way for later precedent holding the United States and agencies thereof bound by various state laws. *See e.g. U.S. v. Kimbell Foods, supra,* (state law applied to determine relative priority of SBA, FHA liens as against liens of private creditors); *FDIC v. Palermo,* 815 F.2d 1329 (10th Cir.1987) (state contract, tort law applied); *Powers v. U.S. Postal Service, supra,* (state landlord/tenant law applied); *FDIC v. Hardt,* 646 F.Supp. 209, 2 UCCRS 2d 996 (C.D.Ill.1986) (UCC applied); *Warner v. FDIC, supra,* (state contract, tort law applied); cf. *FDIC v. Wood,* 758 F.2d 156 (6th Cir.1985) (state law regarding holders in due course rejected because application would frustrate objectives of federal program); *FDIC v. Ritchie,* 646 F.Supp. 1581 (D.Neb.1986)

(state law rejected in ruling on motions to dismiss, motion for leave to file amended complaint and motion to remand). Requiring the FDIC to file a continuation statement and to file it properly is not inconsistent with the holding in *Summerlin.* Applying the rationale of *Kimbell,* this Court has determined that requiring such compliance is appropriate.

The FDIC further argues, relying on *FDIC v. Ritchie, supra,* that unlike the SBA and FHA—the agencies with which *Kimbell* dealt—it is an involuntary creditor and therefore the state commercial code should not apply. The Court is unpersuaded by this argument. Black's Law Dictionary defines "involuntary" to mean "that which is performed with constraint or with repugnance, or without the will to do it. An action is involuntary, then, which is performed under duress, force or coercion." Black's Law Dictionary 742 (5th Ed.1979). As the Court in *FDIC v. National Union Fire Insurance* explained,

> Though the FDIC prefers the use of the purchase and assumption alternative, there are limitations on the FDIC's ability to employ that alternative. *[FDIC v.] Merchants [National Bank of Mobile],* 725 F.2d [634] at 638 [ (11th Cir.1984) ]. The FDIC may not undertake a purchase and assumption transaction unless it determined (1) that such action is "reasonably necessary to save the cost of liquidating, including paying the insured accounts" or (2) that continuing the bank's operation is necessary to provide the community with adequate banking services. *Id.* at n. 1 (citing 12 U.S.C. Sec. 1823(c)(4)(A) (1928)). Only when the FDIC's Board of Directors determines such action will minimize the FDIC's losses may the corporation enter a purchase and assumption transaction. 12 U.S.C. Sec. 1823(e) ... This exercise of judgment re-

quires the FDIC to measure its loss under the insured deposit payoff alternative against its loss under a purchase and assumption transaction. To calculate possible loss under the purchase and assumption transaction as compared to a payoff of insured deposits, all of the failed bank's assets must be evaluated to determine the potential cost to FDIC of assuming unfavorable assets and to determine the price to be paid by the assuming bank for acceptable assets.

*FDIC v. National Union Fire Insurance,* 630 F.Supp. 1149, 1153 (W.D.La.1986). Thus, no element of duress is present in the exercise of the FDIC's judgment. While it is true that the FDIC's evaluation process must be undertaken quickly, and consequently the FDIC is provided certain protections, nevertheless the FDIC is not entirely exempt from application of state law. In the case at bar this Court is convinced that application of the Illinois Commercial Code provision requiring the filing of a proper continuation statement is appropriate.[1]

Finally, the FDIC analogizes to the title-vesting cases, a line of authority construing title-vesting clauses in Government defense procurement contracts. These cases hold that such clauses pass title to the goods concerned rather than granting only a security interest; consequently, the Government is entitled upon termination of the contract to possession of the property, its rights being superior to those of debtor and creditors. *See In re American Pouch Foods,* 769 F.2d 1190 (7th Cir.1985) *cert. den.* 475 U.S. 1082, 106 S.Ct. 1459, 89 L.Ed. 2d 716, and cases cited therein. There is no contractual provision in this case vesting title in the FDIC.[2] The Court rejects the FDIC's argument analogizing to title-vesting cases.

In conclusion, the Court grants the FDIC's motion in part, entering as additional findings of fact the following:

**1.** The Court expresses no opinion as to other applications of the state Commercial Code, stressing that adoption of state law is not automatic.

**2.** The FDIC itself asks the Court to find that it has a "lien or security interest," and the Court has so found.

1) the FDIC is an agency of the United States;

2) the FDIC acquired a lien in the Debtors' equipment, livestock, crops, seed, feed and other supplies as assignee pursuant to 12 U.S.C. Sec. 1821(c).

The Court denies the balance of the FDIC's motion, entering as additional conclusions of law the following:

1) the rights of the FDIC are governed by federal law;

2) the Court adopts state law as the rule of decision in the instant case;

3) the FDIC, as an agency of the United States, is required to perfect its interest in the assets at issue under the Illinois Commercial Code.

The Court adheres to its ultimate conclusion in its Order entered May 12, 1988, that the FDIC's security interest, unperfected under the Illinois Commercial Code, is ineffective against the Trustee. Therefore, the Court's decision granting summary judgment in favor of the Trustee remains unchanged.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.