**In re Peter J. STITHAM, Debtor.**

**Bonnie STITHAM, Plaintiff,**

v.

**Peter STITHAM, Defendant.**

**Bankruptcy No. 92–10450.**
**Adv. No. 92–1048.**

United States Bankruptcy Court,
D. Maine.

April 23, 1993.

Jacqueline L. Gomes, Island Falls, ME, for plaintiff.

Alan F. Harding, Presque Isle, ME, for debtor/defendant.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

In this adversary proceeding, Bonnie Stitham, the debtor's ex-wife, alleges that an $8,000 obligation arising from pre-bankruptcy divorce judgment is non-dischargeable under § 523(a)(5) [1] and that the debtor's concealment of a pre-petition transfer of assets should bar his bankruptcy discharge under § 727(a)(2)(A). For the reasons set forth below, I find for the debtor, Peter Stitham, on both counts.[2]

---

1. 11 U.S.C. § 523(a)(5) (1993). All references to statutory sections are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

2. This is a core matter under 28 U.S.C. § 157(b)(2)(I). This memorandum of decision sets forth the court's findings and conclusions in accordance with F.R.Bankr.P. 7052.

## I.  PROCEDURAL HISTORY

On March 15, 1993, nine days before the scheduled trial date, I convened a telephonic pre-trial conference.[3]  The conference revealed that the parties expected to present little evidence at trial;  that most, if not all, material facts could be stipulated;  and that all proposed exhibits could be admitted without objection.  Accordingly, I ordered the trial continued generally and directed the parties as follows:

3.  On or within 15 days from the date of this order, the parties shall submit a comprehensive factual stipulation, including all stipulated exhibits.  At the time that the stipulation is filed, the parties shall file, as well, affidavits in support of their respective positions.

4.  On or within 15 days of the date of this order, each party shall inform the court whether it wishes the matter to be submitted on the stipulated record, including affidavits, or whether he or she requests an evidentiary hearing.  If an evidentiary hearing is requested, the requesting party shall indicate the estimated length of the hearing and the nature and character of the evidence he or she wishes to present.

5.  Following the filing of all documents called for under this order, the court will decide whether an evidentiary hearing is required and, if so, will contact counsel to schedule trial.

Pretrial Order dated March 16, 1993 at 2–3.

The joint stipulation was filed on March 31, 1993.  By letter dated March 31, 1993, plaintiff's counsel stated, "I have not yet received a copy of Mr. Stitham's affidavit so I cannot definitely say that I won't be requesting an evidentiary hearing.  However, I believe the parties might be better served if [defendant's counsel] and I briefed the issued [sic] for the court."

Plaintiff submitted a sparse, half-page affidavit in support of her claim;  defendant submitted none.  At no time did plaintiff request a hearing or otherwise comply with the March 16 order's terms relating to a hearing request.  Thus, I conclude that the plaintiff has waived an evidentiary hearing and is content to submit the matter for decision on the present record.

## II.  COUNT I: DISCHARGEABILITY

A.  Facts.[4]

Peter Stitham and Bonnie Stitham were divorced on September 30, 1991.  The divorce judgment, negotiated by the parties, states in pertinent part:

Defendant [Peter Stitham] is awarded his pension at the Maine State Retirement; and, for releasing her interest therein, Defendant shall pay Plaintiff [Bonnie Stitham] the sum of Eight Thousand Dollars ($8,000) at Nine Percent (9%) interest within one (1) year from the date of this judgement;  execution to issue.

No alimony is awarded to either party.

Judgment for Divorce, dated September 20, 1991, at 3.[5]

The debtor filed his Chapter 7 petition on June 19, 1992, without having made any payment on the pension-related obligation.

Bonnie Stitham's sworn, undated affidavit, which is uncontroverted, states in full:

1.  Peter refused to pay alimony under any circumstances.

2.  I agreed to accept money out of the pension for support because it was not called "alimony."

3.  I wanted Peter to pay the funds over time.

4.  Peter wanted to pay me in one lump sum.

---

3.  The pre-trial conference was ordered in light of the parties' deficient compliance with the terms of the court's December 15, 1992, pre-trial scheduling order and the plaintiff's request for extension of that order's deadlines for filing exhibit lists, witness lists, stipulations and proposed findings and conclusions.

4.  The facts, drawn from the stipulations, affidavit, and divorce decree, are not in dispute.

5.  The judgment also awarded weekly child support payments to Bonnie Stitham;  obligated Peter Stitham to pay certain joint debts;  required him to maintain health insurance for his minor children;  and provided for a division of various marital assets.  None of those provisions is at issue here.

5. We compromised: he was to pay me in one lump sum within one year from the divorce and I would get some interest for waiting so long.

## B. Discussion.

█ A divorce court's characterization of a debt as alimony or support is not binding in a bankruptcy proceeding. 11 U.S.C. § 523(a)(5)(B). *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978) U.S.Code Cong. & Admin.News pp. 5787, 5864, 5865, 6320.

Generally, the determination of whether an obligation arising out of a divorce settlement is support is a matter of federal law, not state law. *In re Long*, 794 F.2d 928 (4th Cir.1986). Although state court decisions are to be regarded with deference, "bankruptcy courts are not bound by state laws that define an item as maintenance or property settlement, nor are they bound to accept a divorce decree's characterization of an award as maintenance or a property settlement." *In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983).

*Goin v. Rives (In re Goin)*, 808 F.2d 1391, 1392 (10th Cir.1987). *Accord, Jenkins v. Jenkins (In re Jenkins)*, 94 B.R. 355, 358 n. 4 (Bankr.E.D.Pa.1988) (collecting authorities).

If this court were to rely only upon the characterization of the $8,000 debt set out in the divorce judgment, the complaint would fail. The divorce judgment specifies levels of child support and states expressly that there is no alimony.[6] Nothing in it indicates that the $8,000 obligation is anything other than a property division. However, the § 523(a)(5) inquiry must incorporate pertinent bankruptcy principles.

"The analysis of dischargeability under section 523 must begin with the assumption that dischargeability is favored under the Code unless the complaining spouse, *who has the burden of proof,* demonstrates that the obligation at issue is 'actually in the nature of alimony, maintenance or support.'" *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986) (emphasis in original; citation omitted). "[T]he proper test lies in the proof of whether it was the parties' intention that the payments be for support rather than as a property settlement." *Long v. West (In re Long)*, 794 F.2d at 931. "If the parties did not intend to create a support obligation, then the debt is a property settlement and must be discharged in bankruptcy." *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir.1986).

█ Several federal circuit courts have applied a four-factor analysis for evaluating divorce-related debts in a dischargeability context. The bankruptcy court is to consider:

(1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that terminates on remarriage or death is indicative of an agreement for support.

*In re Goin*, 808 F.2d at 1392–93; *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984). *See also Singer v. Singer (In re Singer)*, 787 F.2d 1033, 1035 (6th Cir.1986) (employing some of the factors).[7] The four-factor

---

6. Maine law equates the terms "alimony" and "spousal support." "The essential purpose of alimony is the 'maintenance and support' of the payee spouse." *Harding v. Murray*, 623 A.2d 172, 176 (Me.1993). *See also* 19 M.R.S.A. § 493(10).

7. *Singer* may be read as extending § 523(a)(5) nondischargeability to certain property settlement obligations. 787 F.2d at 1034. To that extent, its holding is broader than the law of this circuit. *See Shine v. Shine*, 802 F.2d 583, 588 (1st Cir.1986) ("Congressional policy in this

analysis is a useful device,[8] and I will apply it here.

(1) The divorce judgment states, "No alimony is awarded to either party." Thus, it provides explicitly that there will be no spousal support. Plaintiff has proffered no evidence that the $8,000 obligation was a product of her need for support.

(2) There are three minor children. The child support worksheet appended to the state court judgment shows the debtor with annual income of $30,307 and the plaintiff with annual income of $7,356. It allocates parental support responsibilities 80/20 respectively. Thus, there was an imbalance of incomes. But the divorce judgment takes account of the imbalance by obligating the debtor to pay the plaintiff $7,820.80 per year in child support.

(3) The debt at issue was to be paid to the plaintiff directly, but there was to be only one payment. Moreover, both the judgment and plaintiff's affidavit link the $8,000 obligation directly to disposition of rights in the debtor's pension.

(4) The obligation at issue is unrelated to plaintiff's remarriage or death.

The conclusion is ineluctable. The debtor's $8,000 obligation to the plaintiff is a product of the division of rights in the debtor's pension upon dissolution of the marriage. It is this court's role to determine the true nature of the obligation, labels notwithstanding, and apply the law accordingly. *Shine v. Shine*, 802 F.2d at 588. It is not this court's role to reassess the equities and redetermine the character of dissolution-based debts.[9] Thus, plaintiff's § 523(a)(5) count must fail.[10]

### III. OBJECTION TO DISCHARGE UNDER § 727

The complaint includes a second count praying for denial of discharge under § 727(a)(2)(A).[11] The burden is on the plaintiff here to show intent to hinder, delay or defraud a creditor or officer of the

---

area has always been to ensure that genuine support obligations would not be discharged.")

**8.** Other courts have adopted tests which, while offering finer detail, implement the same substantive principles. *See, e.g., Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1108 n. 7 (6th Cir.1983) (ten factors); *In re Coffman*, 52 B.R. 667, 674–75 (Bankr.D.Md.1985) (eighteen factors).

*Gianakis v. Gianakis (In re Gianakis)*, 917 F.2d 759 (3d Cir.1990), recently followed in this district in *Zalenski v. Zalenski (In re Zalenski)*, 153 B.R. 1 (Bankr.D.Me.1993), articulates "three principal indicators" for evaluating the character of obligations arising from marital settlement agreements. 917 F.2d at 762–63. *Gianakis* instructs the trial court to consider the language and substance of the agreement or judgment at issue, the parties' financial circumstances at the time of the settlement, and the function served by the obligation at the time of settlement.

The *Gianakis* formula is, essentially, an alternative expression of the four-factor test applied above. *Gianakis* and *Zalenski* correctly emphasize that the inquiry must focus on circumstances as they existed at the time that marital dissolution issues were resolved, rather than at the time of the dischargeability complaint.

**9.** "To such a possibility, this Court says, 'Thanks, but no thanks.'" *Jackson v. Jackson (In re Jackson)*, 102 B.R. 524, 533 n. 13. "[L]imited to its proper role, the bankruptcy court will not duplicate the functions of state domestic relations

courts, and its rulings will impinge on state domestic relations issues in the most limited manner possible." *Id.*, quoting *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 907 (11th Cir.1985).

**10.** This case is distinguishable from the vast bulk of the case law on dischargeability of pension debts arising from a divorce settlement. When pension benefits are divided upon divorce, an order is often entered directing the pension fund to make all or part of its distributions directly to the former spouse. Many courts have found that such funds are not property of the bankruptcy estate of the employee/debtor. *See, e.g., Resare v. Resare (In re Resare)*, 142 B.R. 44 (Bankr.D.R.I.1992) (collecting cases). Where the pension is paid directly to the employee/debtor, some courts have found a constructive trust relationship, rather than that of debtor and creditor. *See, e.g. Bush v. Taylor*, 912 F.2d 989 (8th Cir.1990) (en banc).

In contrast, the debt at issue here is the debtor's personal obligation, incurred in consideration for the plaintiff's release of rights in his pension.

**11.** Sec. 727(a) provides, in pertinent part,

The court shall grant the debtor a discharge, unless—
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate ... has transferred ... or concealed—
   (A) property of the debtor, within one year before the date of the filing of the petition....

estate. F.R.Bankr.P. 4005; *Commerce Bank & Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134, 136 (1st Cir.1992). Actual intent, as opposed to constructive intent, must be proven. *Prentiss v. Gagnon (In re Gagnon)*, 40 B.R. 951, 953 (Bankr. D.Me.1984); 4 Lawrence P. King *Collier on Bankruptcy* ¶ 727.02 at 727–15 (15th ed. 1993) (collecting cases). "Moreover, the statutory requirements for a discharge in bankruptcy are 'construed liberally in favor of the debtor' and ' "[t]he reasons for denying a discharge ... must be real and substantial, not merely technical and conjectural." ' " *In re Burgess*, 955 F.2d at 137 (cites omitted).

█ The record consists only of the allegations of the complaint as admitted or controverted by the answer. Having offered nothing more in support of the § 727(a)(2)(A) count, the plaintiff has either abandoned the cause or elected to stand on the pleadings. Either way, her claim fails. The admitted facts show that the defendant failed to disclose in his statement of affairs the 1991 sale of a car to his brother, but that he did disclose the transaction in the course of the § 341 meeting. Without more, these facts are too flimsy to carry the plaintiff's burden.

### IV. CONCLUSION

For the reasons set forth above, I conclude that the debtor's $8,000 obligation arising from plaintiff's release of her interest in the debtor's pension is dischargeable as a property settlement obligation and that the plaintiff has failed to meet her burden under § 727(a)(2)(A).

An appropriate order will issue forthwith.