In re Theodore F. WARREN, Debtor.

Barbara E. WARREN, Plaintiff,

v.

Theodore F. WARREN, Defendant.

Bankruptcy No. 88–10135.
Adv. No. 93–1043.

United States Bankruptcy Court,
D. Maine.

Nov. 4, 1993.

**396**

Kim M. Vandermeulen, Vandermeulen, Goldman & Allen, Augusta, ME, for defendant.

Martha S. Temple, Gilbert Law Offices, Bangor, ME, for plaintiff.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

This adversary proceeding, here on removal from state court, presents the question whether the debtor's consensual, divorce-related obligation to pay a portion of his children's post-secondary schooling expenses is "in the nature of support" within the meaning of § 523(a)(5)(B) and, thus, whether it survives his September 22, 1988, Chapter 7 discharge. After receiving evidence at trial and the parties' post-trial briefs, I conclude that it does.[1]

### FACTS

Barbara and Theodore Warren were divorced by order of the Maine District Court,

District Seven, Division of Southern Kennebec on August 14, 1987. At that time they were parents of twin fifteen-year-old daughters.

One section of the original divorce judgment, distinct from its property division provisions, delineated the Warrens' respective child support obligations. Among the support provisions the following paragraph appears:

It has been agreed by the Parties that [Theodore] shall maintain a life insurance policy in the amount of Fifty Thousand Dollars ($50,000) with the children as beneficiaries and owned by [Barbara] until the children have completed their college education or reached the age of twenty-three (23), whichever comes first. This agreement is the subject of a separate document enforceable in its own right.

Joint Exhibit A1 at 1. The "separate document" referred to in the judgment is the Warrens' agreement, entered into with the advice of counsel,[2] addressing their responsibilities to fund the twins' post-secondary education (the "College Agreement").[3]

While their divorce was pending, Barbara and Ted each understood that, absent consent, the duty to pay post-secondary education expenses for a child who had reached majority could not be imposed on an unwilling parent under Maine law.[4] In the College Agreement, however, the Warrens undertook voluntarily to share anticipated expenses of their daughters' college educations, namely tuition, room and board, and transportation.[5]

---

1. This memorandum sets forth the court's findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52. All references to statutory sections are to the Bankruptcy Reform Act of 1978 (the "Code" or "Bankruptcy Code"), as amended, 11 U.S.C. § 101 *et seq.*

2. The Warrens initially jointly consulted one attorney regarding their divorce. However, before the final terms of a dissolution agreement were fixed, Barbara retained separate counsel.

3. The College Agreement includes the following paragraph:

 In addition, Theodore Warren shall maintain a life insurance policy in the amount of Fifty Thousand ($50,000.00) Dollars with the children as beneficiaries and owned by [Barbara]

until the children have completed their college education or reached the age of twenty-three (23) whichever comes first.
Joint Exhibit B2 at 2.

4. *See* discussion *infra* at note 14.

5. The College Agreement states:

 The purpose of this present agreement is to provide for undergraduate college education of our two children, Rachel and Elizabeth Warren. It is intended that both parties be bound and this agreement be enforceable.

 The terms of this Agreement are that both parties shall share on a prorated basis the costs of tuition and room and board and transportation to and from the undergraduate college atttended [sic] by each of the . . . children.

The agreement fixes each parent's financial responsibility in correlation to his or her income in the year that expenses are incurred.[6]

The College Agreement was negotiated as part of the Warrens' overall divorce settlement, and, as part of the *quid pro quo,* Barbara accepted lower monthly child support payments than she would otherwise have sought.[7]

On March 30, 1988, Theodore Warren filed a voluntary Chapter 7 petition. Barbara Warren timely initiated an adversary proceeding seeking to establish nondischargeability of certain obligations, rooted in the property division provisions of the original divorce judgment, under § 523(a)(2). That proceeding was resolved when Barbara and Theodore agreed to entry of a state court order amending their divorce judgment and when this court subsequently approved a compromise of the dischargeability dispute tied to the substance of the state court order. The parties agree that the amended divorce judgment and the dischargeability compromise did not in any way affect Theodore's obligations under the College Agreement.[8]

The Warrens' daughters are now twenty-one years old. Both attend college. On February 16, 1993, she filed a state court action against Theodore to enforce the College Agreement. Theodore answered, reopened his bankruptcy case, and removed the action here, asking this court to determine that the obligations in question have been discharged.

## DISCUSSION

### 1. Jurisdiction.

This court has jurisdiction to determine the dischargeability of Theodore's obligations under the College Agreement under 28 U.S.C. §§ 1334 and 1452 and the district court's order of reference for bankruptcy matters. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1)(I) and 11 U.S.C. §§ 523(a)(5) and 523(c).

### 2. The Issue.

■ Whether Theodore's contractual obligation to shoulder a portion of his children's undergraduate college education expenses was discharged in his 1988 chapter 7 bankruptcy is governed by § 523(a)(5), which provides:

Joint Exhibit B2 at 1.

6. The College Agreement includes the following formula and example:

The above-mentioned costs, which are unknown at the present time, shall be totalled on a yearly basis and prorated between the parties. The proration formula shall be based on the net taxable income of each party respectively and each party shall pay a percentage of the total costs of each child's yearly education which is determined by comparing the two parties' net taxable income and arriving at a relative percentage of the total cost of the education on a yearly basis.

An example of this would be that if Theodore Warren made One Thousand ($1,000.00) Dollars as net taxable income and Barbara Warren made Five Hundred ($500.00) Dollars as net taxable income in any given school year of the children, Theodore Warren would pay two-thirds (⅔) of the total cost of education as described above and Barbara Warren would pay one-third (⅓) of said costs.
Joint Exhibit B2 at 1–2.

7. Theodore testified that the College Agreement was not negotiated in the context of the divorce settlement and that it was Barbara Warren's unilateral creation. In this regard, Theodore's testimony is not believable. The agreement itself contradicts him:

The parties to this Agreement are Theodore Warren and Barbara Warren. The consideration for this Agreement between and to each of us is the fact that both of us gave up certain things at the time of divorce in contemplation of this Agreement. The terms of the divorce agreement were arrived at by the parties after both agreed to be bound by this present Agreement.
Joint Exhibit B2 at 1.

Further, that one of two parties to a contested divorce proceeding, having been advised by counsel regarding state law treatment of such obligations, would regard the College Agreement as a "stand alone" proposition unrelated to the resolution of other property division and support issues strains credulity too far.

8. Paragraph 5 of the state court's order amending the Warrens' divorce judgment specifically provides that Theodore "shall not claim the sums paid pursuant to this order against any obligation he has or may have to contribute toward his children's post-secondary education."

(a) A discharge under § 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support....

The issue was not addressed in the Warrens' earlier bankruptcy skirmish.[9]

The College Agreement creates a debt to Theodore's "former spouse" or "child" [10] "in connection with" his separation and property settlement agreement, and "in connection with" the state court's dissolution order.[11] The only question is whether the obligation is "in the nature of support."

### 3. Dischargeability and § 523(a)(5).

■ In the dischargeability context, substance prevails over form. *See Pauley v.*

*Spong (In re Spong)*, 661 F.2d 6, 9 (2d Cir.1981) (citing *Pepper v. Litton*, 308 U.S. 295, 305–06, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939); *Wetmore v. Markoe*, 196 U.S. 68, 72–77, 25 S.Ct. 172, 173–76, 49 L.Ed. 390 (1904)). Labelling an obligation "support" does not necessarily make it so. If, and only if, it is "actually in the nature of ... support" will the obligation survive the discharge. *See* 3 Collier on Bankruptcy, ¶ 523.15[5] (Lawrence King et al. eds., 15th ed. 1993). *See also Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983); *Norris v. Norris*, 324 F.2d 826, 828 (9th Cir.1963) (Bankruptcy Act case).

■ Whether Theodore's College Agreement obligations are actually in the nature of support for purposes of § 523(a)(5) is determined by federal law. *Goin v. Rives (In re Goin)*, 808 F.2d 1391 (10th Cir.1987); *Long v. West (In re Long)*, 794 F.2d 928 (4th Cir.1986); *Williams v. Williams (In re Williams)*, 703 F.2d 1055 (8th Cir.1983); *Stitham v. Stitham (In re Stitham)*, 154 B.R. 1 (Bankr.D.Me.1993); *Zalenski v. Zalenski (In re Zalenski)*, 153 B.R. 1 (Bankr.D.Me. 1993).[12]

Congress did not intend for federal courts to formulate bankruptcy law governing dischargeability of alimony and support obligations "in a vacuum, precluded from all reference to the reasoning of well established law of the states." *In re Spong*, 661 F.2d at 9. At the same time, however, bankruptcy courts "are not bound by state laws that define an item as maintenance or a property settlement, nor are they bound to accept a divorce decree's characterization of an award as maintenance or a property settlement."

---

**9.** Theodore concedes that Barbara's 1988 § 523(a)(2) action did not determine dischargeability of his College Agreement obligations and that the doctrine of *res judicata* does not bar its consideration now. As of that time, no dispute regarding college expenses had arisen. The orders entered in connection with the 1989 compromise left Theodore's college expense contribution obligations untouched. Moreover, Fed. R.Bankr.P. 4007(b) expressly provides that an action to resolve a dispute regarding the dis-

chargeability of support obligations may be brought "at any time." *See* § 523(c).

**10.** For present purposes, it is unimportant whether Theodore's College Agreement obligations run to Barbara or to his daughters.

**11.** *See supra* pp. 396–97.

**12.** Of course, state family law necessarily governs the enforcement of such obligations as they endure beyond bankruptcy.

*In re Goin,* 808 F.2d at 1392, quoting *In re Williams,* 703 F.2d at 1057.

### 4. Post–Majority Support and College Expenses.

Although federal courts have articulated a variety of tests to ascertain whether a given obligation is nondischargeable under § 523(a)(5), and although the factors considered may vary with the terms of the obligation and the circumstances of its creation, the inquiry focuses on the purpose and function of the obligation in light of circumstances as they existed at the time of its creation. *See In re Boyle,* 724 F.2d 681, 683 (8th Cir.1984); *In re Stitham,* 154 B.R. at 4 n. 8. Undertakings such as Theodore's College Agreement obligations may be prospective. Thus, tests employed to determine the dischargeability of garden variety, periodic, post-divorce payments to or for the benefit of children or an ex-spouse may be unhelpful. *Cf., e.g., In re Goin,* 808 F.2d at 1392–93 (periodic payments); *Shaver v. Shaver (In re Shaver),* 736 F.2d 1314, 1316 (9th Cir.1984) (same).

At least two circuit courts of appeal have held that a parent's promise to pay college expenses of adult children may constitute nondischargeable support even though state law could not have imposed such an obligation. *Harrell v. Harrell (In re Harrell),* 754 F.2d 902 (11th Cir.1985); *Boyle v. Donovan (In re Boyle),* 724 F.2d 681 (8th Cir. 1984). Both decisions rejected debtors' arguments that, because a state court could not impose a duty to pay the disputed expenses, their obligations were dischargeable in bankruptcy. *In re Harrell,* 754 F.2d at 905, *In re Boyle,* 724 F.2d at 683. *Cf., e.g., Biggs v. Biggs (In re Biggs),* 907 F.2d 503 (5th Cir. 1990) (affirming decision that divorce decree obligation to pay contractual alimony, notwithstanding fact that state law did not provide for alimony awards, was nondischargeable debt as intended to provide support); *Benich v. Benich (In re Benich),* 811 F.2d 943 (5th Cir.1987) (affirming decision that notwithstanding state law, agreement to make monthly payments to ex-wife for the remainder of her life or until remarriage were nondischargeable alimony or support payments).

*In re Boyle, supra,* considered whether an agreement obligating a parent to pay college and professional school expenses for adult children was nondischargeable. The court considered the obligation in view of: (1) the parents' educations; (2) the parents' relative incomes at the time of the agreement; (3) at whose suggestion the college expense provision was created; and (4) the scope of the obligation (in that case undergraduate and post-graduate education). *Id.* at 683. The court observed that the fact that "the debtor had no duty under Arkansas law to pay for his sons' education does not mean that he and his ex-wife could not have intended the college expense agreement to function as support," and concluded that the "college expense agreement, accordingly, could be considered as providing for the economic safety of the sons during their college years, and hence the agreement is 'in the nature of support.'" *Id.*

### 5. Applying the Principles.

Although the *Boyle* factors are not necessarily exhaustive, they are instructive analytical guides here. Considering the College Agreement in their light reveals that Theodore's obligations under it are nondischargeable. Barbara held an undergraduate degree and Theodore held a master's degree when the agreement was made. Thus, it is reasonable to conclude that they considered their daughters' college training to be a highly desirable, if not essential, element of their upbringing. Second, the relative incomes of Theodore and Barbara were almost equal at the time.[13] The agreement provides for shared responsibility, determined by the parties' relative incomes for years in which the expenses are incurred. Thus, although prospective in nature, the agreement was drafted to operate in a fashion that reflects the circumstances as they existed in 1988. Third, Theodore testified that he entered

---

**13.** Theodore Warren's income in 1987 was $27,-157.00, while Barbara Warren's income in the same year was $26,245.00.

into the agreement because he had been advised that state law would not impose support obligations on either parent once their daughters reached age eighteen. Thus, he wanted to follow through on what he viewed as his parental duty, notwithstanding the fact that he could not be forced to do so. Fourth, the obligation is limited in scope, extending to shared responsibility for room and board, tuition and transportation expenses for the girls' undergraduate educations. Thus, the agreement is no more than a division of responsibility for what the Warrens viewed to be their appropriate role in educating their daughters. The College Agreement was not a property division device in disguise.

The College Agreement's purpose and function was, and remains, to ensure the Warrens' daughters' "economic safety" through their college years, thereby fulfilling the Warrens' perceived and accepted responsibility to educate their children. Accordingly, I conclude that Theodore's obligations under the College Agreement are "in the nature of support" and, therefore, that they were not extinguished by his bankruptcy discharge.

In *Peterson v. Leonard,* 622 A.2d 87 (Me. 1993), Maine's highest court held that Maine courts can enforce by contempt a post-majority support obligation embodied in a separate agreement and incorporated into the divorce judgment, despite the fact that the courts have no power to impose such an obligation on a parent over their objection.[14] The *Leonard* decision did reaffirm the Maine

courts' inability to order payment of post-majority support on an unwilling parent. But its holding that such an agreement, once made and incorporated within a divorce judgment, may be enforced like any other lawful support obligation contains an inherent recognition that the notion of support comprehends obligations beyond those that the state legislature has empowered the courts to impose.[15] To that extent, today's holding evidences harmony between Maine's state law and federal bankruptcy law.

 Theodore asserts that even if post-secondary education obligations may in some instances be nondischargeable, the College Agreement is so broad and its burdens so onerous that his obligations under it extend beyond "support" and should be subject to discharge. He calls *In re Pierce,* 95 B.R. 154, 157–158 (Bankr.N.D.Cal.1988) to his aid. The *Pierce* court did deem it pertinent to consider whether an agreement calling for payment of college expenses contemplates out-of-state or private school tuition; whether it includes money for food, clothing, and entertainment as well as direct expenses; whether discretion over these issues is left to one or both parents; and whether the agreement includes a time limit.

But Theodore's argument cannot carry the day. Application of the fourth *Boyle* factor has already answered it. I will briefly expand that discussion here to answer the contention more precisely. To begin, the agreement before me is reasonably limited given its purpose, "to provide for undergraduate college education of . . . two children." It

**14.** *Leonard* addressed a divorced parent's undertaking to pay for the post-secondary education of an adult child. Maine statutes, with exceptions not pertinent here or in *Leonard,* establish that the courts do not have the power to impose support obligations past the age of majority (18). 19 M.R.S.A. §§ 303(2), 752(10). The *Leonard* court observed that Maine law had long provided that an agreement to pay alimony incorporated into a divorce judgment could be enforced by contempt powers even though the statute in effect at the time the judgment was entered did not authorize such an award. 622 A.2d at 89, citing *Stratton v. Stratton,* 77 Me. 373 (1885); *Wilson v. Wilson,* 140 Me. 250, 36 A.2d 774 (1944). "Because the court may enforce, by contempt, an agreement with respect to alimony that was beyond its power to impose in the first instance, it may similarly enforce a post-majority support

provision that it could not have originally imposed." *Leonard,* 622 A.2d at 89.

**15.** *Leonard* focused on the manner in which a post-majority support obligation might be enforced, whether by a contract action or by a motion invoking a divorce court's contempt powers. The availability of either remedy turns on whether the obligation has been effectively incorporated in a judgment. 622 A.2d at 89. For our purposes it is unimportant whether the College Agreement was or was not incorporated in the Warrens' original divorce judgment or later amendments to it. The question here is the character of the obligation for dischargeability purposes, not the manner in which the obligation may be enforced in state court.

specifies covered expenses: tuition, room, board, and transportation to and from undergraduate college. Theodore's obligations extend no further. In addition, the agreement details the basis on which relative shares of expenses are to be calculated, thereby ensuring that neither parent will be called upon to pay a burdensome share in light of available resources. To the extent that Theodore considers that specific expenses are not within the agreement's scope, he may make his case in the appropriate forum. Thus, on close inspection, Theodore's concerns are unwarranted.

#### 6. Disposition and Remand.

Having determined that Theodore's obligations under the College Agreement survived his bankruptcy discharge, it is appropriate that the case be remanded to state court for liquidation of Barbara's claims under it and for such enforcement as is appropriate.

> "The precise terms under which the obligation may be enforced ... however, can be established only through interpretation of the parties' separation agreements, a task that, should it become necessary, will presumably be performed by the appropriate state court.... [E]stablishing specific dollar amounts for domestic obligations is not an appropriate task for a federal court."

In re Harrell, 754 F.2d at 905, n. 5. See also In re Pierce, 95 B.R. at 160.

#### CONCLUSION

Theodore Warren's obligation under the College Agreement to contribute towards his children's post-secondary educational expenses is nondischargeable under § 523(a)(5). The case is hereby remanded to the state court for further proceedings, including enforcement and determination of such amounts as are or may become due.