**In re Gary SHAW, Debtor.**

**Kim Soffel (formerly known as Kim Shaw), Movant,**

v.

**Gary Shaw, Respondent.**

**Bankruptcy No. 02–29921–MBM.**
**Adversary No. 03–2002–MBM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 18, 2003.

Craig Zotter, Lois Glanby, McMurray, PA, for debtor.

Christine Blue, Pittsburgh, PA, for movant.

Gary L. Smith, Pittsburgh, PA, trustee.

### MEMORANDUM AND ORDER OF COURT

M. BRUCE McCULLOUGH,
Bankruptcy Judge.

**AND NOW,** this **18th day** of **September, 2003,** upon consideration of

(a) the motion for summary judgment by Kim Soffel, plaintiff in the above-captioned adversary proceeding (hereafter "Soffel"), wherein Soffel seeks a determination that a marriage settlement obligation by Gary Shaw, the instant debtor and ex-spouse of Soffel (hereafter "the Debtor"), to answer for the college expenses incurred by Sarah Jane Shaw (hereafter "Sarah"), the child of Soffel and the Debtor (hereafter "the College Expenses Obligation"), is nondischargeable as child support pursuant to 11 U.S.C. § 523(a)(5),

(b) the briefs filed by the parties in support of their respective positions, and

(c) the Marriage Settlement Agreement entered into by the parties on April 22, 1984 (hereafter "the Marriage Settlement Agreement"), which document (i) was handed up to the Court by Soffel's counsel as an exhibit at the September 8, 2003 hearing on Soffel's summary judgment motion, (ii) sets forth the College Expenses Obligation in that portion of such document labeled "Child Support," *see* Marriage Settlement Agmt., pg. 3 ¶ 2, and (iii) appears to have been amended by an addendum on March 6, 2001 (hereafter "the Addendum");

and subsequent to notice and the September 8, 2003 hearing regarding Soffel's summary judgment motion, it is **hereby ORDERED, ADJUDGED, AND DECREED** that Soffel's summary judgment motion is **GRANTED** and the College Expenses Obligation is determined to be child support that is **NONDISCHARGEABLE** pursuant to § 523(a)(5). The rationale supporting the Court's decision is set forth below.

## I.

The standard for obtaining the entry of a summary judgment in the Third Circuit is succinctly explained as follows:

> On a summary judgment motion, the movant must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Once the movant satisfies this initial burden, then the nonmovant must respond with information to the contrary or it will lose. Fed. R.Civ.P. 56(e).

*National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1581 (3rd Cir.1992). Factual issues are "'genuine' only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hankins v. Temple University,* 829 F.2d 437, 440 (3rd Cir.1987). Therefore,

> a nonmoving party ... cannot withstand a summary judgment motion on the basis that a genuine factual dispute exists if the evidence on the record is such that a reasonable jury could only return a verdict in favor of the movant with respect to such fact.

> Finally, "when the only question is what legal conclusions are to be drawn from an established set of facts, the entry of a summary judgment usually should be directed." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2725 (3rd ed.2002). Therefore, genuine disputes as to ultimate questions of fact—that is, mixed questions of fact and law which require for their resolution a legal conclusion to be drawn from facts already established—are normally treated, for purposes of a summary judgment motion under Rule 56, as are other genuine legal disputes, which is to say that the existence of such disputes shall not

preclude the entry of a summary judgment.

*In re Foxmeyer Corporation,* 286 B.R. 546, 556 (Bankr.D.Del.2002).

## II.

As an initial matter, the Debtor appears to argue that neither the Marriage Settlement Agreement nor the Addendum were executed by the Debtor. *See* Debtor's Answer to Compl., filed Feb. 10, 2003, ¶¶ 8 (next to last sent.) & 11; Debtor's Answer to Summ.J.Mot., filed July 23, 2003, ¶ 4. Because the copy of the Marriage Settlement Agreement which was submitted to the Court as an exhibit by Soffel's counsel contains the signature of the Debtor, the Court holds that a reasonable jury could only conclude, and thus that a genuine dispute does not exist, that such document was executed by the Debtor. As for the Addendum, whether or not the same was executed by the Debtor is immaterial to whether the College Expenses Obligation is nondischargeable pursuant to § 523(a)(5) because (a) the Marriage Settlement Agreement, rather than the Addendum, established such obligation, and (b) the Addendum does not operate to extinguish such obligation except to the extent of $2,500 of such obligation for which the Debtor was in arrears—indeed, because such $2,500 portion of such obligation is extinguished by the Addendum, it is actually in the Debtor's best interest not to argue that he has failed to execute the Addendum. In light of the foregoing, the Court holds that the College Expenses Obligation remains a viable claim against the Debtor, which claim will now be analyzed with regard to whether it should be declared nondischargeable pursuant to § 523(a)(5).

## III.

11 U.S.C. § 523(a)(5) provides, in pertinent part, that a bankruptcy dis-

charge does not discharge an individual debtor from any debt "to a spouse, former spouse, or child of the debtor, for ... support of such spouse or child, in connection with a ... divorce decree ..., but not to the extent that ... (B) such debt includes a liability designated as ... support, unless such liability is actually in the nature of ... support." 11 U.S.C.A. § 523(a)(5) (West 1993). Soffel, as the party objecting to the discharge of the College Expenses Obligation, has the burden of proving that such debt should be nondischargeable under § 523(a)(5), *see In re Gianakas,* 917 F.2d 759, 761 (3rd Cir. 1990), which burden she must carry by a preponderance of the evidence, *see* 4 *Collier on Bankruptcy,* ¶ 523.04 at 523–19 to 20 (Bender 2003) (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

■ The parties do not appear to dispute that the College Expenses Obligation is a debt in connection with a divorce decree. However, the Court finds that a genuine dispute cannot exist with respect to such factual issue in any event (a) because, according to the Marriage Settlement Agreement, the same "shall be incorporated into and become a part of the ... [parties'] decree of divorce," *see* Marriage Settlement Agmt., last page (presumably pg. 9) ¶ 3, and (b) given that the College Expenses Obligation is established by and within the Marriage Settlement Agreement. It also matters not, for purposes of the applicability of § 523(a)(5) to the College Expenses Obligation, whether such debt is technically owed by the Debtor to Sarah, the parties' child, rather than Soffel because, as long as such debt constitutes support for Sarah, the plain language of § 523(a)(5) makes such debt nondischargeable even if the same is technically owed to Sarah rather than Soffel. *See In re War-*

*ren,* 160 B.R. 395, 398 n. 10 (Bankr.D.Me. 1993).

■ One of the hallmark arguments advanced by the Debtor in support of his position that the College Expenses Obligation should be discharged by virtue of his bankruptcy is that (a) Sarah is, and apparently was at all times relevant to the instant matter, of the age of majority, and (b) support to be provided for a child after the same reaches the age of majority is, as a matter of law, not covered by, or excepted from a debtor's discharge by virtue of, § 523(a)(5). The Court must reject such argument by the Debtor, however, since, "[b]ecause Congress 'did not limit the word "child" [in § 523(a)(5) ] by prefacing it with the word "minor," ' § 523(a)(5)[, as a matter of law,] allows for the nondischargeability of certain support obligations owed to children even after they have reached the age of majority." *In re Seixas,* 239 B.R. 398, 404 (9th Cir. BAP 1999) (holding that obligation of debtor therein to provide for children's college education was nondischargeable under § 523(a)(5)); *see also, e.g., In re Crosby,* 229 B.R. 679, 681–682 (Bankr.E.D.Va.1998) (same); *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984) (same); *In re Grovatt,* 2000 WL 1281524 at *2–4 (E.D.Pa.2000) (same); *In re Ozey,* 166 B.R. 169, 172 (Bankr. N.D.Okla.1994) (same); *Warren,* 160 B.R. at 400 (same). Therefore, it matters not for purposes of the instant proceeding whether Sarah had reached the age of majority prior to, or at some point during, the time when she incurred expenses that are appropriately the subject of the College Expenses Obligation; quite simply, provided that the College Expenses Obligation constitutes—or, more accurately, is in the nature of—support for Sarah within the meaning of § 523(a)(5), the same is nondischargeable pursuant to § 523(a)(5).

"[W]hether an obligation is in the nature of . . . support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement." *Gianakas*, 917 F.2d at 762. "That intent can best be found by examining three principal indicators[, namely] . . . the language and substance of the agreement in the context of surrounding circumstances, . . . the parties' financial circumstances at the time of the settlement[, and] . . . the function served by the obligation at the time of the divorce or settlement." *Id.* at 762–763. Because whether parties intended for an obligation to serve as support in contrast to a property settlement constitutes an ultimate question of fact—that is, a mixed question of fact and law which requires for its resolution a legal conclusion to be drawn from facts already established, namely the three principal indicators set forth in the preceding sentence herein—a dispute only as to such intent by the parties may be resolved by way of, and thus does not preclude, the entry of a summary judgment. Therefore, the Court, at the summary judgment stage, may resolve a dispute as to whether the parties herein intended for the College Expenses Obligation to serve as support for Sarah provided that genuine disputes do not exist regarding the three principal indicators described above.

With respect to the first indicator set forth in *Gianakas*, the Court concludes that a genuine dispute does not exist regarding the pertinent language and substance of the Marriage Settlement Agreement. That the College Expenses Obligation is established and discussed entirely within that section of the Marriage Settlement Agreement labelled "Child Support" supports a conclusion that the parties intended for such obligation to serve as support for Sarah. Furthermore, that weekly child support of $37.50 was required to be provided by the Debtor regarding Sarah up until she reached age 19 in the event that she did not attend college evidences that the College Expenses Obligation is merely a replacement form of child support, which replacement form is set forth in the Marriage Settlement Agreement in the paragraph immediately following that which established the $37.50 weekly obligation. *See* Marriage Settlement Agmt., pg. 3 ¶ 1. Moreover, that the Marriage Settlement Agreement contains a separate, discrete section labelled "Equitable Division of Property," wherein the parties resolved issues regarding property settlement, *see* Marriage Settlement Agmt., pp. 5–7, tends to defeat the Debtor's position that matters dealt with under the heading "Child Support" constitute "equitable distribution" notwithstanding where such matters are addressed within the Marriage Settlement Agreement. In light of the foregoing, the first *Gianakas* factor points in favor of holding that the parties intended for the College Expenses Obligation to serve as support for Sarah.

As for the second *Gianakas* factor, little evidence was provided as to the financial circumstances of the parties herein at the time of the Marriage Settlement Agreement. However, "that one spouse had custody of minor children . . . [is an] aspect[ ] of the parties' financial circumstances at the time the obligation was fixed which shed[s] light on the inquiry into the nature of the obligation as support." *Gianakas*, 917 F.2d at 763. A genuine dispute does not exist that Soffel possessed sole custody of Sarah at the time of, and subsequent to, the execution of the Marriage Settlement Agreement. *See* Marriage Settlement Agmt., pg. 4. Although Soffel's custody of Sarah while she was a minor seems to shed minimal light on whether the parties intended for the

College Expenses Obligation to serve as support for Sarah after she attained the age of majority, the Court concludes that such custody is as helpful with respect to the issue of such intent as would be other information regarding the parties' financial circumstances as of the date of execution of the Marriage Settlement Agreement. Moreover, such custody of Sarah, when coupled with the fact that the Debtor, in his response to Soffel's summary judgment motion, fails to assert that the parties' financial circumstances at the time of the Marriage Settlement Agreement is supportive of his opposition to such motion by Soffel, causes the Court to conclude that the Debtor does not genuinely dispute that the second *Gianakas* factor should be found to point in Soffel's favor with respect to the instant matter.

Regarding the third *Gianakas* indicator, that is the function served by the obligation at the time of the divorce or settlement, "[a]n obligation that serves to maintain daily necessities such as food, housing[,] and transportation is indicative of a debt intended to be in the nature of support." *Gianakas*, 917 F.2d at 763. A genuine dispute does not exist that (a) the College Expenses Obligation is comprised of, "but [is] not limited to[,] the following: tuition, room, board, books, supplies, fees, transportation, and clothing," *see* Marriage Settlement Agmt., pg. 3 ¶ 2, and (b) such obligation consequently serves to maintain Sarah's daily necessities while she attends college. As well, the Court must reject—and at the summary judgment stage—any notion by the Debtor that the College Expenses Obligation constitutes some sort of an attempt by the parties to balance out an unequal division of marital property so that such obligation can then be viewed not as a vehicle to maintain daily necessities for Sarah—ie., support for Sarah—but rather as a means to effectuate a property division between Sarah's parents. The Court must rule in the preceding fashion (a) because, and as the Debtor concedes, it was Soffel rather than the Debtor that received a disproportionate amount of marital property through equitable distribution, and (b) since the Debtor's "balancing out" argument only makes sense if the Debtor received more marital property than Soffel via equitable distribution, which inequity could then perhaps be viewed as having been remedied by the Debtor's incurring of the College Expenses Obligation in favor of Soffel. In fact, that the College Expenses Obligation did not attempt to balance out an unequal property division between the Debtor and Soffel provides further undisputed evidence that such obligation's actual purpose was to provide support for Sarah while she attended college. *See Seixas,* 239 B.R. at 405 (finding that, because provision to provide for college education of children of debtor therein " 'does not appear to ... attempt to balance out an unequal property division[, i]t is there to provide some protection [ (ie., support) ] for these two boys' college education' "). Finally, the Court notes that the Debtor, in his Response Brief filed on September 8, 2003, makes mention of the fact that (a) decisional law in Pennsylvania when the Marriage Settlement Agreement was executed in 1984 allowed for a court to order divorced parents to provide financial support for the post-secondary school education of their children, even absent an agreement by such parents to such effect, *see* Hon. Vincent A. Cirillo, *Curtis v. Kline: The Pennsylvania Supreme Court Declares Act 62 Unconstitutional—A Triumph for Equal Protection Law,* 34 Duq.L.Rev. 471, 475 (1996) (mentioning *Commonwealth ex rel. Ulmer v. Sommerville,* 200 Pa.Super. 640, 190 A.2d 182 (1963), as controlling precedent until 1992), and (b) such law, which was ultimately codified in 1993 at 23

Pa.C.S.A. § 4327, has since been held unconstitutional by the Pennsylvania Supreme Court, *see Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265 (1995). The Court can only surmise that the Debtor's purpose in noting the preceding is to suggest in a roundabout fashion that, because the Debtor could no longer be ordered by a court to provide support for the college education of Sarah, any obligation that he has consensually undertaken in such regard thus cannot be characterized as support. Such argument by the Debtor fails, and as a matter of law, however, because (a) divorced parents, of course, can contract to provide support for the post-secondary school education of their children even if applicable state law does not dictate the provision of such support, and (b) the characterization of such contractual obligation as support or not, for purposes of § 523(a)(5), depends entirely on the parents' intent irrespective of any state law mandate. *See Boyle*, 724 F.2d at 683; *Ozey*, 166 B.R. at 172; *Warren*, 160 B.R. at 399. In fact, that Pennsylvania law in 1984 allowed for courts to impose upon divorced parents an obligation to provide support for their children's post-secondary school education tends to support a finding that the Debtor's purpose in consensually agreeing to pay for Sarah's college education was so as to stave off an order from the state family court ultimately to assume a support obligation regarding such education; thus, the state of Pennsylvania's @law in 1984 arguably provides further evidence that the function of the College Expenses Obligation was to provide for the support of Sarah while she attends college. In light of the foregoing, the third of the three *Gianakas* factors points overwhelmingly in favor of holding that the parties intended for the College Expenses Obligation to serve as support for Sarah.

Because the Court finds that each of the three *Gianakas* factors points in favor of a holding that the parties intended for the College Expenses Obligation to serve as support for Sarah, the Court shall so hold, which means necessarily then that such obligation, to use the vernacular of § 523(a)(5), is actually in the nature of support. Accordingly, the College Expenses Obligation is held to be nondischargeable as child support pursuant to § 523(a)(5), which holding dictates that the Court grant Soffel's summary judgment motion.

### IV.

**IN SUMMARY**, Soffel's summary judgment motion is **GRANTED** and the College Expenses Obligation is determined to be child support that is **NONDISCHARGEABLE** pursuant to § 523(a)(5).